**RAYMOND I. SMITH, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17015.**

United States Court of Appeals
Ninth Circuit.

June 28, 1961.

Rehearing Denied Aug. 7, 1961.

---

1. 189 F.Supp. 70.

Valentine Brookes, Paul E. Anderson, Richard A. Wilson, San Francisco, Cal., for petitioner.

Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Michael I. Smith and Kenneth Levin, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before POPE, HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

The Commissioner of Internal Revenue gave Raymond I. Smith, Inc., notice of his determination that there were deficiencies in the taxpayer's income and excess profits taxes for the years 1950, 1952, 1953 and 1954. The company petioned the Tax Court for a redetermination of the deficiencies. Prior to trial the parties settled by stipulation all claimed deficiencies except those for accumulated earnings taxes asserted under section 102(a) of the Internal Revenue Code of 1939, ch. 289, § 102, 52 Stat. 483, 26 U.S.C.A. § 102(a), and section 531 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 531.

The Tax Court held that no deficiencies were due from the company under section 102 for the years 1950 and 1952. That court held, however, that in 1953 there was a deficiency in the amount of $25,365.33 under former section 102, and that in 1954 there was a deficiency in the amount of $31,461.36 under section 531. Raymond I. Smith, Inc., has petitioned to review this adverse decision as to the 1953 and 1954 taxes.

An accumulated earnings tax may not be imposed unless a corporation has been formed or availed of for the purpose of avoiding the income tax with respect to shareholders by permitting earnings or profits to accumulate instead of being divided or distributed.[1] The Tax Court sustained the Commissioner's determination that petitioner corporation had been used for this purpose in 1953 and 1954.

Petitioner argues here that in reaching this decision the Tax Court erroneously placed the burden of proof upon petitioner, disregarded its own findings of fact which should have led to a contrary decision, and erroneously failed to allow petitioner an accumulated earnings credit for 1954.

Petitioner is a Nevada corporation having as its principal business the operation of the bars in Harold's Club, in Reno, Nevada. Harold's Club, occupying several adjoining buildings in downtown Reno, operates a legalized gambling casino. Harold S. and Raymond A. Smith operated the club as a partnership from June 1, 1938, to December 31, 1946, at which time Harold's Club was incorporated.

Their father, Raymond I. Smith, was employed as general manager of the club but owned no interest therein. During all of the time here concerned his compensation as manager was $10,000 a year plus twenty per cent of the net profits before income taxes and officers' compensation. This amount ranged from about $44,000 in 1941 to a high of $557,559.57 in 1953.

No liquor was sold on the premises prior to 1943. In that year the sons, although they refused to participate in any bar operation, permitted their father to install bars and operate them on his own account while continuing as general manager of the club. It was the father's view that the casino operation would be benefited if patrons could obtain liquor on

1. See section 532 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 532. Substantially the same test was set out in section 102(a) of the 1939 revenue act.

the premises instead of having to go elsewhere.

Raymond I. Smith operated the bars as a sole proprietor until the end of 1946. During the years 1944 to 1946 the net income realized therefrom averaged about $73,000 a year. In computing his income taxes, Smith allocated this net income between himself and his wife and valued his services in operating the bars at $10,000 a year. Smith incorporated the bar operation on November 15, 1946, and is the sole stockholder of Raymond I. Smith, Inc.

Since its incorporation this company has earned and paid income taxes on net income ranging from a low of $100,209.-42 in 1949 to a high of $278,630.70 in 1955. It has, however, paid no salary or dividends to Raymond I. Smith during any of these years. As a result, by 1955 the corporation had accumulated undistributed earnings in the sum of $781,-475.25. During the years 1950 through 1954, Smith and his wife reported and paid federal income taxes on income (representing primarily his compensation as manager of Harold's Club) ranging from a low of $83,040.48 in 1952 to a high of $247,719.46 in 1950. Their tax brackets for those years ranged from 80% in 1952 to 90% in 1950.

Petitioner draws its entire clientele from the patrons of Harold's Club. Petitioner's business promotion was therefore designed to increase club patronage and to protect the club from competition; the bars were not advertised as a separate business. Such promotion further benefited Raymond I. Smith in that his compensation as general manager of the club was geared to the club's net income.

One promotion outlay was for the purchase and display of the so-called Roaring Camp collection of memorabilia of the Old West. Petitioner purchased this in 1949 for $150,000, and the former owners of the collection were employed at substantial expense to transport it to fairs, rodeos and other gatherings for the purpose of advertising Harold's Club.

Another such expenditure was for the purchase on December 31, 1951, of the Moana Auto Apartments for a price of $200,000. This was a motel on the southern outskirts of Reno near the airport and on the main road from Reno to Los Angeles. The Moana provided accommodations available to patrons of Harold's Club, which operated limousine service between the motel and the club. In September 1953 petitioner purchased the land and buildings of the Moana Coffee Shop for a price of $25,233.30. This restaurant was needed to complement the hotel facility, and petitioner also planned to install a bar as soon as the then existing lease expired.

The Moana Motel and Coffee Shop did not, however, prove attractive to club patrons, and their operation by petitioner was creating ill will with other motel operators who were in a position to help or hurt Harold's Club. For these reasons the Moana facilities were sold in 1955.

In December 1953 petitioner purchased two parcels of land approximately three miles south of Reno on the main highway from Las Vegas, Carson City and the south end of Lake Tahoe. The purchase price of one parcel consisting of 339 acres of farm land was $818,842.75. The second parcel was 6.186 acres adjacent to the first, having a 520-foot highway frontage, which petitioner purchased for $52,036.80. An additional 2½ acres of adjoining land representing a strip of highway frontage 936 feet long was purchased by petitioner in 1954 for $110,-096.80. Petitioner borrowed $500,000 in 1953 from Harold's Club on its demand note to pay on the purchase price of the 339-acre tract. A $100,000 payment was made on this note in 1954.

The farm property was originally offered to Harold's Club but the club was not in a position to make the purchase because of prior commitments, including the construction of a seven-story building at its downtown Reno location. It was able to lend $500,000 to the petitioner on a short term basis because it would not need that part of its accumulations for the erection of its new building until construction progressed.

When petitioner made these farm-land purchases, its officers and those of Harold's Club were aware that other persons were trying to buy property near Reno for so-called "strip operation" purposes. A strip operation may include a hotel, motel, or both, a gambling casino, and possibly other related operations on a strip of land fronting on a main highway. The owners of Harold's Club and the petitioner felt that Harold's Club had to be protected against competition of this kind, and desirable land might not be available later. Harold's Club had purchased 180 acres for $120,000 in 1951 with this in mind. The latter property, however, was located about seven miles west of Reno and was not regarded as particularly favorable for a strip operation.

At the time of purchasing this farm land petitioner had no plans for its immediate development. Petitioner and Harold's Club planned to develop the property later if necessary. The plan for later development contemplated a large hotel, gambling casino, convention hall, all-season swimming pool, golf course and some residential property surrounding the golf course, all at an anticipated cost of $10,000,000.

Petitioner employed architects who presented preliminary drawings in 1957 together with an estimate of $17,000,000 as the probable cost. Petitioner and Harold's Club realized that in view of this high estimate the contemplated development could not be started until they had accumulated additional earnings. No blueprints have been prepared, and the property has been leased to crop farmers. Petitioner recorded a net loss of $21,158.65 on the property for 1954.

Harold I. Smith, who was president and treasurer of petitioner, and Guy Lent, the petitioner's secretary, consulted each year with petitioner's certified public accountant concerning the payment of dividends. Each year the accountant advised that no dividend should be paid because the petitioner was not in a financial position to do so. Lent made similar recommendations to Smith, principally on the basis of petitioner's commitments in connection with the various purchases which have been described.

The facts summarized above are consistent with the Tax Court's formal findings of fact, and are not challenged on this review. In the section of its report denominated "Opinion" the Tax Court concluded that petitioner was availed of for the purpose of avoiding income taxes for 1953 and 1954 with respect to its sole shareholder, Raymond I. Smith.

■ On this review petitioner argues at length that whereas the burden of proof to establish the proscribed purpose rightfully was on the Commissioner, the Tax Court placed that burden upon petitioner and held against petitioner on the ground that it had not sustained that burden.

The Commissioner based his determination that petitioner had the proscribed purpose on the ground that the accumulations in question were beyond the reasonable needs of the business.[2] This is at least a permissible premise (petitioner seems to argue that under the circumstances of this case it is the only premise) from which it may be inferred that there was such a purpose. As did section 102(c) of the 1939 Code, section 533(a) of the Internal Revenue

2. This ground is not disclosed in the notice of deficiencies. In respondent's answer to the taxpayer's petition to the Tax Court, however, respondent states, "In support of respondent's determination that during the taxable years 1950, 1952, 1953 and 1954 the petitioner was availed of for the purpose of preventing the imposition of the surtax [income tax] upon its sole stockholder, through the medium of permitting earnings and profits to accumulate instead of being divided or distributed, respondent alleges that in each of said years the petitioner distributed none of is earnings and that the entire accumulation of petitioner's earnings in each of said years was beyond the reasonable needs of the business." We may therefore assume that this was the ground relied upon in making the initial determination.

Code of 1954, 26 U.S.C.A. § 533(a), provides that if the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business, that fact shall be determinative of the purpose to avoid the income tax with respect to shareholders unless the corporation by the preponderance of the evidence shall prove to the contrary.

But where, as here, the taxpayer has submitted a statement of the grounds relied upon to establish that the accumulations were for the reasonable needs of the business, the burden of proving that such accumulations were beyond the reasonable needs of the business is on the Commissioner with respect to the grounds set forth in the taxpayer's statement. Section 534(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 534 (a).[3] The grounds set forth in the taxpayer's statement are the same as those upon which it has relied in the Tax Court and on this review.

The Tax Court's opinion states, "The petitioner, of course, has the ultimate burden of proof." As indicated above, this is not true in any case covered by section 534 if by "ultimate burden of proof" the Tax Court was referring to the burden of proving that the accumulations were beyond the reasonable needs of the business. Moreover, it is not true in this case if the Tax Court was referring to the burden of proving the proscribed purpose, to avoid the income tax upon shareholders. The Commissioner sought to prove that purpose only by

showing that accumulations were excessive, and as to this showing the Commissioner had the burden of proof.

The Tax Court's statement is correct if it was referring to the burden of proof placed upon a taxpayer where the Commissioner has established the basic fact that the accumulations were excessive. As stated in section 533(a), that fact is determinative of the proscribed purpose "unless the corporation by the preponderance of the evidence shall prove to the contrary."

■ But if we should assume that the Tax Court incorrectly determined that the burden of proof here rested with the taxpayer, no prejudice would have resulted unless a finding of fact adverse to petitioner was predicated only on petitioner's failure to sustain the burden of proof.[4] We have examined the record and can find no substantial finding which falls in this category. Almost all the facts were agreed to prior to trial, and none of those recited in the formal findings are challenged.

Only the ultimate finding and conclusion set out in the Tax Court's opinion, that petitioner accumulated excessive earnings and therefore had the proscribed purpose, are questioned. These, however, represent the resolution of mixed questions of fact and law on the basis of the probative evidence in the record, and we do not believe that the Tax Court's views as to burden of proof played any part in the determination so made.

3. There was no similar provision in the 1939 Code. By an amendment of section 534 enacted in 1955, however, the burden of proof rule set out in section 534(a) was made applicable to taxable years to which the corresponding provisions of prior revenue laws apply, provided the proceedings on the merits were had after the date of the 1955 enactment. The 1955 amendment of section 534 was enacted on August 11, 1955. 69 Stat. 690, 691. The proceedings on the merits herein were had in the Tax Court in June 1959. The burden of proof rule set out in section 534 as amended is therefore applicable with regard to both the 1953 and 1954 taxes here in question.

4. On similar reasoning other courts have usually declined to discuss the burden of proof question and have proceeded at once to the underlying problem of whether the findings are supportable on the basis of affirmative evidence in the record. American Metal Corp. v. Commissioner of Internal Revenue, 8 Cir., 287 F.2d 860, 861–862; Dixie, Inc. v. Commissioner of Internal Revenue, 2 Cir., 277 F.2d 526, 527; Smoot Sand & Gravel Corp. v. Commissioner of Internal Revenue, 4 Cir., 274 F.2d 495, 504; I. A. Dress Co. v. Commissioner of Internal Revenue, 2 Cir., 273 F.2d 543, 544.

We conclude that petitioner has not been prejudiced by the views entertained by the Tax Court as to the burden of proof in this case, whatever those views may have been.

Petitioner next argues that the decision of the Tax Court is not supported by its findings. It is contended specifically that the recitals in the opinion are in conflict with the formal findings of fact and also indicate skepticism concerning some of the facts set out in the findings.

In its opinion the Tax Court stated that the purchase of the farm land "at such a large price for the stated purpose by Harold's Club might be one thing, but by the petitioner is quite another." Petitioner believes that this conclusion is inconsistent with the court's finding that "whatever is done for one corporation also benefits the other."

We do not believe that the two statements are inconsistent. The quoted finding refers to the fact that services rendered by Lent to Harold's Club also benefited petitioner. In its opinion the court reasoned that while any benefits received by Harold's Club also benefit petitioner, an expenditure by the latter for the benefit of Harold's Club could be so out of proportion to petitioner's capitalization, income and position as an adjunct business that it would be unreasonable for purposes of the petitioner's business as Congress used those words in section 533.

There are instances in the opinion in which skepticism in expressed concerning some of the findings of fact. But the findings on which the Tax Court relied in concluding that petitioner both had unreasonably accumulated earnings and that the accumulation was for the proscribed purpose are set forth in the opinion. These were the facts that petitioner was an adjunct business with a stake in the prosperity of Harold's Club which while direct was relatively minor as compared to that of the Club; that petitioner's assets and annual income were relatively modest in relation to the commitments it undertook in acquiring the farm lands; that the prospect of petitioner's ever making use of the farm lands was questionable and in any event remote and vague.

It was on the basis of these facts that the Tax Court reached the conclusion that the accumulations exceeded the reasonable needs of the business. That conclusion is stated expressly with regard to 1954, and for 1953 is necessarily to be implied from the opinion read as a whole. If the law permits such a conclusion to be drawn from such facts (see discussion below), the proscribed purpose was established prima facie.

The expressions of doubt in the Tax Court's opinion concerning the adopted findings regarding the purpose of the accumulations and the recital therein of other facts tending to show a purpose to avoid taxes [5] do not render any less supportable its basic conclusion that the reasonable needs of the business were exceeded. At most they represent the statement of an alternative ground for the Tax Court's conclusion that petitioner had the proscribed purpose. If the primary ground relied upon was adequate, the Tax Court's warrant to state the alternative ground is immaterial.

The real question posed by the Tax Court's decision is not whether the conclusions concerning the reasonable need for the accumulation are supported by the findings, but whether they evidence an erroneous understanding of section 533, in which the accumulation "beyond the reasonable needs of the business" test is prescribed.

In our view they do not. Congress did not want the taxing authorities

5. In its opinion the Tax Court stated that Smith's taxable income during each of the taxable years was large and placed him in high tax brackets, that he owned and controlled the petitioner, that the petitioner paid no dividends and paid Smith no salary, that income producing property was assigned to the petitioner corporation by Smith, and that the retention by the petitioner of its earnings would save Smith from surtaxes which he would have had to pay if the petitioner had distributed dividends to him.

to be second-guessing the responsible managers of corporations as to whether and to what extent profits should be distributed or retained, unless they were in a position to prove that their position was correct. Casey v. C. I. R., 2 Cir., 267 F.2d 26, 30. They are in that position, we believe, when the facts, as in this case, show a gross disproportion between the commitments made and prospective benefits to the taxpayer.

 We hold that the conclusions stated in the opinion of the Tax Court are supported by the findings of fact and give correct application to the governing statutes.

Petitioner argues that in any event the Tax Court erred in failing to allow it an "accumulated earnings credit" for 1954. The reference here is to section 535(c) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 535(c), which, as petitioner concedes, is not applicable to the year 1953.

This credit is to be in an amount equal to such part of the earnings and profits for the taxable year "as are retained for the reasonable needs of the business." For the purpose of determining such credit, the term "reasonable needs of the business" includes the "reasonably anticipated" needs of the business. Section 537 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 537.

The Tax Court denied any such credit on the ground that the accumulations at the end of 1954, to the extent that they reflect ownership of the farm lands, improvements thereon and equipment used thereon, are not within the reasonable needs of the business.

Petitioner's attack upon this determination is that it resulted from the erroneous placing of the burden of proof upon the petitioner.

With regard to the 1954 credit, the ultimate determination of a proscribed purpose is not involved, but only the determination of whether accumulations were retained "for the reasonable needs of the business." As to the latter, section 534 places the burden of proof squarely upon

the taxing authorities. Moreover, where the question of accumulated earnings credits are involved, the "reasonably anticipated" needs of the business, as well as its current needs, must be negatived by the Commissioner's showing.

We have already stated that under the circumstances of this case the Commissioner in effect had the burden of proof to establish that funds were accumulated beyond the reasonable needs of the business. We have also held that whether or not the Tax Court correctly understood this proposition, the unchallenged findings are supported by substantial affirmative evidence and the conclusions as to the excessive accumulations are supported by the findings. This disposes of the argument raised on the accumulated earnings credit aspect of the case, unless the fact that "reasonably anticipated" needs are to be taken into consideration makes a difference.

In our opinion it does not. In effect the Tax Court held that the accumulations for both 1953 and 1954 were beyond the reasonably anticipated needs of the business. We have already expressed the view that this holding does not evidence an erroneous understanding of the applicable statutes.

Affirmed.