NOVELART MANUFACTURING COMPANY, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3483–67.    Filed August 11, 1969.

*Sol Goodman,* for petitioner.
*Rodney G. Haworth,* for respondent.

798

OPINION

The accumulated earnings tax imposed by section 531 of the Internal Revenue Code of 1954 applies, with certain exceptions, to any corporation formed or availed of for the purpose of avoiding the income tax with respect to its shareholders by permitting earnings and profits to accumulate instead of being divided or distributed. There are set forth in the margin pertinent sections of the Internal Revenue Code of 1954.[2]

Section 533(b) provides that the fact that any corporation is a mere holding or investment company shall be prima facie evidence of the purpose to avoid the income tax with respect to shareholders. One of the respondent's contentions is that during the taxable years

---

[2] SEC. 531. IMPOSITION OF ACCUMULATED EARNINGS TAX.

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax * * *

SEC. 532. CORPORATIONS SUBJECT TO ACCUMULATED EARNINGS TAX.

(a) GENERAL RULE.—The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.

\*     \*     \*     \*     \*     \*     \*

SEC. 533. EVIDENCE OF PURPOSE TO AVOID INCOME TAX.

. (a) UNREASONABLE ACCUMULATION DETERMINATIVE OF PURPOSE.—For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.

(b) HOLDING OR INVESTMENT COMPANY.—The fact that any corporation is a mere holding or investment company shall be prima facie evidence of the purpose to avoid the income tax with respect to shareholders.

SEC. 535. ACCUMULATED TAXABLE INCOME.

(a) DEFINITION.—For purposes of this subtitle, the term "accumulated taxable income" means the taxable income, adjusted in the manner provided in subsection (b), minus the sum of the dividends paid deduction (as defined in section 561) and the accumulated earnings credit (as defined in subsection (c)).

\*     \*     \*     \*     \*     \*     \*

(c) ACCUMULATED EARNINGS CREDIT.—

(1) GENERAL RULE.—For purposes of subsection (a), in the case of a corporation other than a mere holding or investment company the accumulated earnings credit is (A) an amount equal to such part of the earnings and profits for the taxable year as are retained for the reasonable needs of the business, minus (B) the deduction allowed by subsection (b)(6). * * *

\*     \*     \*     \*     \*     \*     \*

(3) HOLDING AND INVESTMENT COMPANIES.—In the case of a corporation which is a mere holding or investment company, the accumulated earnings credit is the amount (if any) by which $100,000 exceeds the accumulated earnings and profits of the corporation at the close of the preceding taxable year.

\*     \*     \*     \*     \*     \*     \*

SEC. 537. REASONABLE NEEDS OF THE BUSINESS.

For purposes of this part, the term "reasonable needs of the business" includes the reasonably anticipated needs of the business.

in question the petitioner was such a mere holding or investment company, stating, among other things, that practically all of petitioner's income reported was passive, namely, dividends, interest, rent, and gains from the sales of stocks or securities. He cites section 1.533–1(c) of the Income Tax Regulations.[3] The petitioner denies that it was a mere holding or investment company, contending that it was actively engaged in research and development, a search for diversification, and the acquisition of additional plants, even though the production was carried on through subsidiaries.

We find it unnecessary to resolve the issue of whether the petitioner was a mere holding or investment company, since, irrespective of that question, it is our opinion that the petitioner has failed to meet its burden of showing that it was not availed of for the purpose of avoiding the tax on its sole shareholder, Charles H. Klein.

The respondent also contends that the petitioner's earnings and profits for the years in question were accumulated beyond the reasonable needs of its business. Section 533(a) provides that the fact that the earnings and profits are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary. The burden of proof was upon the petitioner to show that the earnings and profits were not permitted to accumulate beyond the reasonable needs of the business.[4]

The petitioner's principal contention appears to be that throughout the 3 taxable years in question it actually expended more for plant and equipment than the total of its earnings and profits for those years available for distribution, and that therefore it cannot be considered

[3] Such regulation provides as follows:
*Holding or investment company.* A corporation having practically no activities except holding property and collecting the income therefrom or investing therein shall be considered a holding company within the meaning of section 533(b). If the activities further include, or consist substantially of, buying and selling stocks, securities, real estate, or other investment property (whether upon an outright or marginal basis) so that the income is derived not only from the investment yield but also from profits upon market fluctuations, the corporation shall be considered an investment company within the meaning of section 533(b).

[4] In this connection it should be pointed out that on brief the petitioner makes the argument that in view of the statement which it submitted, pursuant to sec. 534(c) of the Code, the burden of proof is upon the respondent with respect to the grounds stated therein upon which petitioner relied to establish that its earnings and profits had not been permitted to accumulate beyond the reasonable needs of its business. However, as pointed out in the Findings of Fact, prior to trial this Court entered an order denying the petitioner's motion that the Court find that such statement was sufficient to place the burden of proof in this respect upon the respondent. The intention of the Court and the effect of the order was to hold, in advance of the trial, that the petitioner's statement was not sufficient to place the burden of proof upon the respondent, and that such burden remained upon the petitioner.

that such earnings and profits were accumulated beyond the reasonable needs of its business, but it also stated as a reason for its accumulations that the acquisition of plants looked at and negotiated for would have required an investment of up to $5 million. We have consistently held that in determining whether the earnings and profits of any taxable year have been accumulated beyond the reasonable needs of the business, it is necessary to consider whether accumulated earnings and profits of prior years were sufficient to meet the taxpayer's reasonable business needs of the taxable year, including reasonably anticipated needs. There must, of course, be taken into consideration the availability of the prior years' accumulated surplus. Thus, to the extent that such accumulated surplus has been translated into plant expansion or inventories or other assets related to the business, it is not available for meeting current or anticipated business needs. On the other hand, at least to the extent that such accumulated surplus is reflected in liquid assets, it is available to meet business needs, and if sufficient to meet the current and reasonably anticipated business needs of the corporation there is a strong indication that any accumulation of earnings and profits of the current year is beyond the reasonable needs of the business. *Wellman Operating Corporation*, 33 T.C. 162; *John P. Scripps Newspapers*, 44 T.C. 453; *Smoot Sand & Gravel Corporation* v. *Commissioner*, (C.A. 4) 274 F.2d 495, certiorari denied 362 U.S. 976, affirming a Memorandum Opinion of this Court; section 1.535–3(b)(1)(ii), Income Tax Regs.; and S. Rept. No. 1622, 83d Cong., 2d Sess., p. 317.[5]

Here the petitioner, as of the beginning of the taxable year ended June 30, 1961, had accumulated earnings and profits from prior years in the amount of $4,772,080.74, of which $1,558,234.34 was represented by cash and $1,478,139.85 was represented by investments in Government obligations and stocks, bonds, and other securities. It is against this background that we must consider whether the earnings and profits of the taxable years in question were permitted to accumulate beyond the reasonable needs of the business.

The reasonable needs of a business include the reasonably anticipated needs of such business. Sec. 537, 1954 Code. However, where the future needs of the business, as determined in the light of the facts existing as of the end of the taxable year, are uncertain or vague or the plans for the future use of an accumulation are not specific and definite, an accumulation cannot be justified on the grounds of reasonably

---

[5] Such report states in part:

In determining the portion, if any, of the earnings and profits for a taxable year which may be retained for the reasonable needs of the business, the amount of the earnings and profits accumulated in prior years shall, of course, be taken into account.

anticipated needs. See sec. 1.537–1(b), Income Tax Regs.,[6] and H. Rept. No. 1337, 83d Cong., 2d Sess., p. A173.[7]

It should be further observed that the need to retain earnings and profits must be directly connected with the needs of the corporation itself and be for bona fide business purposes (sec. 1.537–1(a), Income Tax Regs.), but that the business of the corporation is not merely that which it has previously carried on but includes any line of business which it may undertake. Section 1.537–3 of the regulations [8] provides

---

[6] Such section provides in part as follows:

(b) *Reasonably anticipated needs.* (1) In order for a corporation to justify an accumulation of earnings and profits for reasonably anticipated future needs, there must be an indication that the future needs of the business require such accumulation, and the corporation must have specific, definite, and feasible plans for the use of such accumulation. Such an accumulation need not be used immediately, nor must the plans for its use be consummated within a short period after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of such a plan is postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably anticipated needs of the business.

(2) Consideration shall be given to reasonably anticipated needs as they exist on the basis of the facts at the close of the taxable year. Thus, subsequent events shall not be used for the purpose of showing that the retention of earnings or profits was unreasonable at the close of the taxable year if all the elements of reasonable anticipation are present at the close of such taxable year. However, subsequent events may be considered to determine whether the taxpayer actually intended to consummate or has actually consummated the plans for which the earnings and profits were accumulated. In this connection, projected expansion or investment plans shall be reviewed in the light of the facts during each year and as they exist as of the close of the taxable year. If a corporation has justified an accumulation for future needs by plans never consummated, the amount of such an accumulation shall be taken into account in determining the reasonableness of subsequent accumulations.

[7] Such House report provides as follows:

It is intended that this provision will make clear that there is no requirement that the accumulated earnings and profits be invested immediately in the business so long as there is an indication that future needs of the business require such accumulation. In any case where there exists a definite plan for the investment of earnings and profits, such corporation need not necessarily consummate these plans in a relatively short period after the close of the taxable year. However, where the future needs of the business are uncertain or vague, or the plans for the future use of the accumulations are indefinite, the amendment does not prevent application of the accumulated earnings tax.

[8] Sec. 1.537–3 of the regulations provides as follows:

Business of the corporation.

(a) The business of a corporation is not merely that which it has previously carried on but includes, in general, any line of business which it may undertake.

(b) If one corporation owns the stock of another corporation and, in effect, operates the other corporation, the business of the latter corporation may be considered in substance, although not in legal form, the business of the first corporation. However, investment by a corporation of its earnings and profits in stock and securities of another corporation is not, of itself, to be regarded as employment of the earnings and profits in its business. Earnings and profits of the first corporation put into the second corporation through the purchase of stock or securities or otherwise, may, if a subsidiary relationship is established, constitute employment of the earnings and profits in its own business. Thus, the business of one corporation may be regarded as including the business of another corporation if such other corporation is a mere instrumentality of the first corporation; that may be established by showing that the first corporation owns at least 80 percent of the voting stock of the second corporation. If the taxpayer's ownership of stock is less than 80 percent in the other corporation, the determination of whether the funds are employed in a business operated by the taxpayer will depend upon the particular circumstances of the case. Moreover, the business of one corporation does not include the business of another corporation if such other corporation is a personal holding company, an investment company, or a corporation not engaged in the active conduct of a trade or business.

that the business of a corporation may include the business of another corporation if such other corporation is a mere instrumentality of the first corporation, and that this may be established by showing that the first corporation owns at least 80 percent of the voting stock of the second corporation. However, if the ownership of stock in the second corporation is less than 80 percent the determination of whether the funds are employed in a business operated by the first corporation will depend upon the circumstances of the case. See also H. Rept. No. 1337, 83d Cong., 2d Sess., p. 53.[9] The regulations further provide that an accumulation for the purpose of acquiring a business enterprise through the purchase of stock or assets, or to make investments or loans to suppliers or customers if necessary to maintain the corporation's business, may constitute an accumulation for the reasonable needs of the business. Sec. 1.537–2(b), Income Tax Regs. However, accumulations of earnings and profits to make investments in properties or securities which are unrelated to the activities of the business of the taxpayer-corporation may not be considered as accumulations to meet the reasonable needs of the business. See *Kerr-Cochran, Inc.*, 30 T.C. 69, and sec. 1.537–2(c), Income Tax Regs.

On or about January 1, 1960, the petitioner transferred all its manufacturing assets to its subsidiary, Progress, and thereafter, throughout the years in question, that company carried on the lithographing business previously carried on by the petitioner, and the petitioner thereafter continued its research and development activities in the field of lithography. However, since petitioner owned 80 percent of the voting stock of Progress, the business of the latter will be considered as the business of the petitioner.

As of the end of the taxable year ended June 30, 1961, there existed a need for additional plant space to carry out the existing lithography business then being carried on by Progress. In 1959 the board of directors had instructed Klein, its president, to obtain preliminary cost estimates in order that a decision could be made as to whether a new plant should be built or an existing plant expanded. The evidence does not show whether, as of the end of the taxable year ended June 30, 1961, that decision had been made and, if so, the anticipated cost

---

[9] H. Rept. No. 1337, 83d Cong., 2d Sess., contains the following at p. 53:

Another subject of controversy in the administration of section 102 has been the use of retained earnings for the purpose of acquiring another business enterprise. Under existing interpretations, retained earnings may be invested in a business enterprise operated directly by the taxpayer, but doubt exists as to the operation of such a business through a subsidiary corporation controlled by the taxpayer. Your committee is of the opinion that where the taxpayer has 80 percent or more of the voting stock of another corporation, the taxpayer should be viewed as though it engaged directly in the business of such other corporation. If the taxpayer's ownership of stock is less than 80 percent in such other corporation, a factual determination should be made as to whether the funds so invested are employed in a business operated by the taxpayer. * * *

involved. However, the evidence does show that approximately 6 months after the close of such year the petitioner started negotiations for buying an existing plant, the Mitchell Avenue plant. The asking price was $1,500,000, but the petitioner considered that price too high and finally, in September 1962, such plant was purchased by petitioner for $532,000. Under these circumstances, we think it reasonable to conclude that as of the end of the taxable year ended June 30, 1961, one of the reasonably anticipated needs of the business was additional plant space to cost approximately $532,000. This was also the situation at the end of the taxable year ended June 30, 1962.

Sometime in 1967, which was at least 3½ years after the close of the last taxable year here involved, the petitioner purchased a plant in North Vernon, Ind., at a cost between $750,000 and $1 million. The evidence shows that during the taxable years here involved the petitioner had no specific and definite plan to purchase this or any other particular plant, other than the Mitchell Avenue plant. And, although Klein testified that it was contemplated that some expenditure would be made for a plant at some time in the future, he also stated that it was not known how much would be spent since that would depend upon the market and the facilities which would be required. Thus, during the taxable years here involved the petitioner's future plant needs were so vague and uncertain and its plans for the future use of funds for that purpose so indefinite that we cannot conclude that it had any reasonably anticipated need for funds for plant acquisition over and above the above anticipated expenditure of $532,000.

Minutes of meetings of the board of directors of the petitioner state that the officers and directors had undertaken a program of acquiring other business enterprises. Such policy was general in nature and it was contemplated that Klein would first investigate any possible acquisitions before determining which were worthy of consideration. In determining the reasonably anticipated needs of the business in this respect there may be taken into consideration only those plans for acquisitions which, as of the end of a particular taxable year, were specific and definite.

In 1957 or 1958 Klein became interested in the possibility of purchasing for petitioner an interest in the U. O. Colson Co., which manufactured lithographed calendars, but which was not a supplier, customer, or competitor of the petitioner. In June 1960 the board of directors of petitioner authorized Klein to take necessary action to invest funds, the amount being unspecified, of the petitioner in the capital stock of that company. Klein became a director of the Colson Co. and from time to time discussed with its president, U. Gordon Colson who owned a majority interest, the possibility of purchasing an interest. However, the petitioner never did acquire an interest in

that company, and Klein testified that "the thought of acquiring the company continued" until late 1967 [10] when the assets of such company were sold to another. While in his testimony Klein spoke of acquiring the company, the record fails to show how much the petitioner had in mind might be invested in the Colson Co. or how much of an interest in that company might be purchased. Klein testified that he "didn't feel it was worth an investment of a million and a half dollars and we didn't go any further." Whether the amount referred to by Klein represented the asking price for Colson's majority interests, or some other percentage interest, we cannot determine from the evidence. In any event, the record falls far short of establishing that the petitioner had in mind acquiring the business enterprise and operating it. Rather, insofar as the record shows, the intention was merely to make an investment in the stock of the Colson Co., which would represent an investment in securities unrelated to the petitioner's business activities. Furthermore, the record does not establish to our satisfaction that as of the end of any of the taxable years before us there was a specific and definite plan to purchase an interest in the Colson Co. We are not informed as to when Klein decided that it was not advisable to invest as much as was apparently asked for an interest in the Colson Co. For all that appears, this may have happened during the taxable year ended June 30, 1961, and thereafter there was no definite expectation or intention of acquiring an interest in that company. Accordingly, the petitioner has not established that as of the end of any of the taxable years in question there was a reasonable business need for funds for the purpose of acquiring an interest in the Colson Co.

In July or August 1960, the petitioner set up a subsidiary, Electro-shred Corp., to enter into the production of paper shredding machines. It was anticipated that from $200,000 to $300,000 would be expended in this venture. The evidence shows that during the 3 taxable years before us the petitioner invested about $50,000 in this project, but the amount invested in each year is not shown. Accordingly, viewing the situation as it existed at the end of the taxable year ended June 30, 1961, we think there was a reasonably anticipated need of the business of petitioner of about $250,000 for this purpose. This was also the situation at the end of the taxable year ended June 30, 1962. However, in the taxable year ended June 30, 1963, due to unforeseen circumstances, the project was abandoned, with the result that thereafter there was no further need in this respect.

---

[10] The transcript of testimony shows the time as "late 1957." However, such date is obviously incorrect since it was not until June 18, 1960, that petitioner's board of directors considered the matter of investment in that company. From the record we think it reasonable to conclude that the correct time was "late 1967." However, whether it was late 1967 or some other date after June 18, 1960, is, in our opinion, immaterial.

During the taxable year ended June 30, 1961, the petitioner undertook a "plastic lid project" under an agreement with another company which provided that the petitioner would perform a part of the manufacturing process. The evidence is not clear as to how much was spent on the project or when any expenditures were made. Klein testified that petitioner bought some machinery and used some it already owned, so that petitioner "had like a hundred thousand dollars" worth of machinery and time in it for the year it worked on the project. Nor does the evidence establish what amount, if any, might represent the reasonably anticipated need of the petitioner with respect to this project as of the end of the taxable year ended June 30, 1961. During the taxable year ended June 30, 1962, the project was abandoned.

Sometime in 1960 petitioner attempted to purchase a 10-percent interest in Crystal Tissue Co., the asking price of which was $100,000. However, at an undisclosed time someone else purchased the interest. The evidence with regard to this prospective purchase is so meager that we cannot determine whether or not it was in prospect at the end of the taxable year ended June 30, 1961. In addition, it is not established that the purpose in purchasing such an interest would be to maintain the petitioner's business rather than merely make an investment in securities unrelated to petitioner's business activities. Under the circumstances, we cannot find that as of the end of any one of the taxable years in issue there was a reasonable business need for such an investment.

In January 1961, the petitioner purchased for $150,000 a 10-percent interest in A.P.S. Co. Since, as a consequence, that company became a customer of Progress, such expenditure might be considered as satisfying a reasonable need of petitioner's business. However, there is no showing that as of the end of any of the taxable years in question there was any need for further accumulation in connection with such acquisition.

At some undisclosed time after April 1961, the petitioner and the president of J. J. Hackett Co. set up a new corporation for the purpose of manufacturing tabulating machine cards, the petitioner acquiring 75 percent of the stock. Since we do not know when this transaction occurred, we do not know whether at the end of any of the taxable years involved herein, the petitioner had any reasonably anticipated need for funds with respect to this project. All we know is that the petitioner's total investment in capital and machinery for the new corporation was $50,000 during the 3 taxable years involved herein, but we do not know how much was invested in each year.

In May 1961, petitioner purchased, for $275,000, the Rapid American Building. We are not persuaded by the evidence that petitioner

intended to use this building for any purpose other than rental. In any event, there is no showing that as of the end of any of the taxable years there was any need for further accumulations in connection with such acquisition.

In June 1961, the petitioner purchased an interest in Magna Co. for $72,000. Since one of the purposes was to obtain that company as a customer the expenditure may well have satisfied a reasonable need of petitioner's business. However, there is no showing that as of the end of any of the taxable years in question there was any need for further accumulations in connection with the interest acquired in such company.

In November 1961, Klein, on petitioner's behalf, began investigating the possibility of purchasing the John Baumgarth Co., the asking price for which was about $2,500,000. However, at some undisclosed time, after receiving a research report, the petitioner abandoned any idea of acquiring this company. Under the circumstances, we cannot find that as of the end of either of the taxable years ended June 30, 1962, or June 30, 1963, the petitioner had any reasonably anticipated need for funds with respect to the purchase of such company.

In March 1963 Klein commenced discussions with the owners of Artistic Greeting Card Co. with regard to the possible acquisition of an interest in that company. The family which owned that business proposed to sell petitioner a 50-percent interest for about $1,900,000 and the remaining 50-percent interest to a younger member of the family for $100,000, it being pointed out to petitioner that such member of the family would also contribute his experience and certain "intangible assets." Klein's investigation of the company, which included inspection of the company's financial records by petitioner's tax attorney in August 1963, continued until December 1963 when Klein decided that it would be inadvisable for petitioner to assume the risk of such an undertaking, and therefore broke off all negotiations. The evidence is so meager that we must conclude that petitioner has not shown that it ever contemplated the possibility of acquiring the business enterprise and operating it, as distinguished from making a passive investment therein. The fact that the proposal was to have a member of the family of the owners of the business pay such a small amount for a half interest, as compared with the petitioner's proposed payment, coupled with the fact that such family member was to contribute his experience and other benefits to the business, casts doubt upon the question. Moreover, the evidence does not establish that as of the end of the taxable year ended June 30, 1963, there was a definite plan to purchase any interest in that company. The evidence indicates that up to that time Klein had been engaged in nothing more than discussions of possibilities, and that not until after the end of the year

was there even any investigation of the financial condition of the company. See *Wellman Operating Corporation, supra.* Furthermore, when Klein did conduct negotiations with regard to purchase terms in December 1963, he proposed that a part of the price be paid out of future earnings of the business of Artistic Greeting Card Co. For all that appears this may have been contemplated from the beginning. Under the circumstances we cannot conclude that as of the end of the taxable year ended June 30, 1963, the petitioner has shown that it had any reasonably anticipated business need to accumulate funds to purchase an interest in the Artistic Greeting Card Co. Moreover, even if it were concluded that at the end of such year there was a reasonably anticipated business need for funds to purchase an interest in that company, this would not justify the accumulation of any earnings and profits of the taxable year ended June 30, 1963, since, as pointed out *infra*, the petitioner had sufficient available earnings accumulated from prior years to more than provide the necessary funds.

At some undisclosed time during the taxable years in question the petitioner considered the purchase of a large block of stock in the Manz corporation, which was in the lithography business. Substantially all the stock of that company was offered for sale for about $2 million to $2,500,000. At some undisclosed time another party bought the company. Since this is all the evidence shown, obviously it is insufficient to show that as of the end of any of the taxable years here involved the petitioner had any reasonably anticipated need for funds in connection with the acquisition of an interest in such company.

At June 30, 1961, the petitioner had accumulated earnings and profits, exclusive of earnings and profits of that taxable year, of $4,772,080.74. At that time it also had liquid assets including cash of $1,948,241.20 and stocks, bonds, and other securities of $682,356.75. Thus, at the end of the taxable year ended June 30, 1961, the petitioner had accumulated earnings and profits of prior years, in liquid form, far in excess of any proven reasonable needs of the business for that year, including any reasonably anticipated future needs. The only reasonable needs including anticipated needs, shown as of that time amounted to $782,000. The same is true with respect to the taxable years ended June 30, 1962, and June 30, 1963. As of June 30, 1962, the petitioner had accumulated earnings and profits, exclusive of earnings and profits of the taxable year ended June 30, 1962, of $4,919,779.18 and had cash and securities of $2,866,197.91, whereas the proven needs amounted to $782,000. As of June 30, 1963, petitioner had accumulated earnings and profits, exclusive of earnings and profits of the taxable year ended June 30, 1963, of $5,045,466.44 and had cash and securities of $2,667,923.39, whereas it did not prove any reasonable needs as of that time.

The petitioner paid dividends of only $15,400 for each of the taxable years in question, whereas its retained earnings and profits for those 3 years amounted to $147,698.44, $125,687.26, and $85,568.98, respectively.

In view of the foregoing, we have concluded and have found as a fact that during the years in question petitioner permitted its earnings and profits to accumulate beyond the reasonable needs of its business. Section 533(a) provides that such fact shall be determinative of the purpose to avoid the income tax with respect to the shareholders unless the corporation by the preponderance of the evidence shall prove to the contrary.[11] The petitioner has introduced no evidence to rebut the presumption contained in section 533(a). Accordingly, we hold that petitioner has not shown that it was not availed of during the years in question for the purpose of avoiding the income tax with respect to its shareholder by permitting its earnings and profits to accumulate instead of being divided or distributed.

The petitioner further contends that the accumulated taxable income for each year, which is the basis upon which the tax is computed (sec. 531), should be reduced by the amounts it expended to pay premiums on insurance on the lives of Klein and other key employees.

Section 535(a) of the Code defines "accumulated taxable income" as the taxable income, with certain adjustments (none of which would include life insurance premiums) minus the dividends paid deduction and the accumulated earnings credit. The petitioner states that it was the owner of the policies and concedes that, in view of the provisions of section 264(a)(1) of the Code,[12] such premiums are not deductible in computing taxable income, yet it has not pointed to any other provision of the law which would permit the reduction of accumulated taxable income. It does not contend that the payment of the premiums constituted dividends for purposes of the dividends-paid deduction, nor does it contend that they should be included in the calculation of the accumulated earnings credit provided for by section 535(c). It merely states on brief that "premium on the life insurance was proper; was paid out; was no longer available for distribution; did not constitute an accumulation; and should have been considered in determining

---

[11] In *United States* v. *Donruss Co.*, 393 U.S. 297 (1969), the Supreme Court held that in order to rebut the presumption contained in sec. 533(a) the taxpayer must establish that tax avoidance with respect to its shareholders was not "one of the purposes" for the accumulation of earnings beyond the reasonable needs of the business and that it is not sufficient to prove that tax avoidance was not the "dominant, controlling, or impelling" reason for the accumulation.

[12] Sec. 264(a)(1) of the Code provides:

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy.

the remaining earnings during the taxable years available for distribution."

Since Congress has specifically provided for the deductions and adjustments to be taken into account in computing accumulated taxable income, and since we cannot find that these insurance premiums fall within any of the prescribed deductions or adjustments, we conclude that there is no merit in this contention of the petitioner.

In view of the foregoing, we hold that for the taxable years in question the petitioner is subject to the accumulated earnings tax imposed by section 531 of the Code, and the respondent's determination is approved.

*Decision will be entered for the respondent.*