GOLCONDA MINING CORPORATION, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 4352–67, 4940–68.    Filed August 2, 1972.

*F. A. LeSourd*, *Woolvin Patten*, and *Robert L. Magnuson*, for the
petitioner.

*Richard J. Shipley*, for the respondent.

### SUPPLEMENTAL OPINION

DAWSON, *Judge:* On May 19, 1972, the petitioner filed a motion for
reconsideration of the Court's opinion (58 T.C. 139) filed herein on
April 27, 1972, seeking revision of the holding that petitioner is sub-
ject to the accumulated-earnings tax for the year 1966. Petitioner filed
a memorandum in support of its motion. By order dated May 25,
1972, respondent was directed to file a reply to the motion for recon-
sideration on or before June 26, 1972. On June 15, 1972, petitioner
filed a supplementary memorandum in support of its motion for re-
consideration and on June 22, 1972, filed an additional memorandum
of authorities. Respondent filed a memorandum in opposition to peti-
tioner's motion for reconsideration on June 26, 1972, and petitioner
filed a reply to that memorandum on July 10, 1972.

Petitioner's motion for reconsideration asserts two grounds in sup-
port of the relief requested: (1) That the Court erred in taking into
account the unrealized increment in market value of petitioner's se-
curities in determining that its earnings and profits were accumulated
beyond its reasonable business needs in 1966; and (2) that the Court
erred in failing to consider the effects of the capital gains tax, selling
expenses, and the principle of "blockage" in determining that the
value of petitioner's securities in 1966 exceeded its reasonable business
needs. Respondent requests us to reconsider the effect to be given to
the 230,000 shares of Hecla stock received by petitioner in exchange
for its Lucky Friday stock.

As we pointed out at pages 160–161 of our opinion in this case, to
make the factual determination of whether petitioner permitted its
earnings and profits to accumulate beyond the reasonable needs of its
business, *J. M. Perry & Co.* v. *Commissioner*, 120 F.2d 123 (C.A. 9,

1941); *Cummins Diesel Sales of Oregon, Inc.* v. *United States*, 321 F.2d 503 (C.A. 9, 1963), affirming 207 F. Supp. 746 (D. Ore. 1962), it is necessary to ascertain whether prior accumulations of earnings are sufficient to meet petitioner's reasonable business needs. In making this analysis the Commissioner is not limited to considering only book and balance sheet entries. The Commissioner is free to, indeed should, consider whether a further retention of earnings is an unnecessary addition to existing corporate liquidity, i.e., idle funds at the disposal of the corporation. See "The Taxation of Corporate Surplus Accumulations," Joint Committee on the Economic Report, 82d Cong., 2d Sess., pp. 11, 16–19, 23–27. Where that surplus is "reflected in liquid assets in excess of the immediate or reasonable foreseeable business needs of the corporation, there is a strong indication that the purpose of the accumulation is to prevent the imposition of income taxes upon dividends which would have been distributed to the shareholders." *Smoot Sand & Gravel Corporation* v. *Commissioner*, 274 F.2d 495, 501 (C.A. 4, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 362 U.S. 976 (1960). See also *Novelart Manufacturing Co.*, 52 T.C. 794, 806 (1969), affd. 434 F.2d 1011 (C.A. 6, 1970), certiorari denied 403 U.S. 918 (1971).

Petitioner asserts that the current market value of its unrelated business assets may not be taken into account in determining whether its 1966 earnings and profits were accumulated beyond the reasonable needs of its business, citing *Harry A. Koch Co.* v. *Vinal*, 228 F. Supp. 782 (D. Neb. 1964). This Court has previously concluded in the case of *Henry Van Hummell, Inc.*, T.C. Memo. 1964–290, affd. 364 F.2d 746 (C.A. 10, 1966), that:

Although petitioner carried all of its investments on the balance sheet at cost, our findings of total net liquid assets include the liquid investment at market value. Here again it is clear that, while cost may be a proper valuation for conservative accounting statement purposes, market value is a much more meaningful figure for purposes of our analysis. We are concerned with the total assets available as of a given time to meet business needs. Hence, the assets (including investments) must be valued at such amount as is most likely to be realized if they were to be converted into cash to meet business needs. The historical cost of the investments means very little in such an inquiry. While market value as of December 31 of any given year may not turn out to be the exact amount realized on the date on which the asset is turned into cash to meet business needs, it is clearly a closer estimate than historical cost.

Petitioner argues further that since its reasonable business needs exceeded its accumulated earnings and profits in 1966 it cannot be held liable for the accumulated-earnings tax because of its retention of its current earnings and profits for 1966. This argument is without merit. Section 535(c) provides an accumulated-earnings credit of an amount

equal to *such part of the earnings and profits for the taxable year* as are retained for the reasonable needs of the business. In this case the petitioner had net liquid assets available to meet its reasonable business needs without retaining any portion of its 1966 earnings and profits. Therefore, petitioner is not entitled to any accumulated-earnings credit for 1966. See *Raymond I. Smith, Inc.* v. *Commissioner*, 292 F.2d 470, 476 (C.A. 9, 1961), affirming 33 T.C. 141 (1959).

To adopt the position advanced by petitioner would produce a highly anomalous result. It is conceivable that a corporation with accumulated earnings and profits of $1 million and retained earnings and profits of $850,000 for the current year could demonstrate that its reasonable business needs exceeded $5 million so as to avoid the imposition of the accumulated-earnings tax for the current year. However, as a result of very astute investment management, the corporation's funds, including its accumulated earnings and profits, could have been successfully invested in securities with a current market value in excess of $100 million. Such a taxpayer undoubtedly has the financial capacity to meet its reasonable business needs of $5 million without any further accumulation of its current earnings and profits. The result described above was reached in *American Trading & Production Corp.* v. *United States*, (D. Md. 1972, 29 A.F.T.R. 2d 72–1301, 72–1 U.S.T.C. par. 9432), where, in our opinion, the District Court failed to appreciate the significance of the corporation's liquidity in determining whether its current earnings and profits could be retained with impunity. The District Court focused upon whether the corporation should be required to liquidate its existing securities holdings to meet its reasonable business needs rather than the crucial question of whether its current earnings and profits had been permitted to accumulate beyond the reasonable needs of its business. But see *Fenco, Inc.* v. *United States*, 234 F. Supp. 317, 325–326 (D. Md. 1964), where this question was considered and the opposite conclusion was reached.

In *Helvering* v. *Nat. Grocery Co.*, 304 U.S. 282 (1938), the Supreme Court found that unrealized losses in the values of certain securities held by the taxpayer could be considered in deciding whether accumulations of earnings and profits were in fact required by the taxpayer in connection with the operation of its business. The fundamental practicality of that decision makes it seem patently clear to this Court that the key question here is really how much in the way of liquid assets was it reasonable to keep on hand for the needs of the business. *United Block Co.* v. *Helvering*, 123 F.2d 704 (C. A. 2, 1941), certiorari denied 315 U.S. 812 (1942). Therefore, in considering the instant case we cannot shut our eyes to the facts before us and disregard the very

substantial liquid position of the petitioner. To do so would permit the entire thrust of the statutory scheme in this area to be thwarted.[1]

Petitioner also contends that, in considering the value of petitioner's liquid assets over and above its reasonable business needs, we failed to give consideration to the capital gains tax that would be incurred in selling its securities, the costs that would be incurred in making such a sale, and the lower market price which would be obtained because of the disposition of large blocks of stock. The arguments made by petitioner in its original memorandum in support of the motion for reconsideration on this point have been subsequently expanded and amplified in a supplementary memorandum filed June 15, 1972, and a memorandum of additional authorities filed June 22, 1972.

In view of the manner in which Golconda conducted its business operations during the period in issue, the arguments advanced above are entirely academic and speculative. They are not germane to the resolution of the issues in this case. The first contention made is that we failed to give consideration to the capital gains tax that would be incurred by Golconda in selling its investment securities. It would be totally impossible to make any calculation with respect to this tax since Golconda made both purchases and sales of Hecla stock on almost a daily basis as market conditions warranted. Thus, in disposing of this stock Golconda would be free to choose those lots of stock with the highest basis for tax purposes so as to minimize the tax impact of such sales. If Golconda chose to follow its earlier course of action taken with respect to the disposition of part of its Lucky Friday stock, discussed at page 150, it might execute sales against the box to further minimize the capital gains tax incurred on such a disposition.

Petitioner also asserts that we failed to consider the expenses which would be incurred in selling such substantial blocks of stock. At no point does anyone in this case advance the notion that all of the funds constituting the reasonable needs of petitioner's business need be avail-

---

[1] It should be noted that petitioner's reconstructed tabulation of its reasonable business needs for 1966, at p. 2 of the memorandum filed in support of the motion for reconsideration, is in error. In computing Golconda's reasonable business needs petitioner has duplicated certain items already taken into account in our original computation at p. 165 of our opinion. Only Golconda's investment assets were used as a starting point. Excluded from assets were the value of property, plant, and equipment. Accordingly, this figure should not then be added back as part of petitioner's business needs. Similarly, we reduced the fair market value of petitioner's investment assets by the fair market value of the Hecla stock received from the Lucky Friday merger and by the fair market value of Golconda's interests in companies holding Coeur d'Alene land. Therefore, the adjustments proposed by petitioner have already been made. In addition, in computing petitioner's reasonable business needs, we have simply totaled the amounts indicated as reasonable business needs under item IV of petitioners exh. 140 for the year ending Dec. 31, 1966, subject to our modification of the estimated cost of the deep exploration and production project which we found to be $2,500,000 instead of $3,500,000 as alleged by petitioner. This final figure was then rounded off and used in our chart at p. 165.

able in cash at any one given instant. The record clearly shows that funds were needed gradually to meet petitioner's business needs. No evidence whatsoever tends to show the necessity of a secondary distribution to immediately raise a substantial amount of cash for the purpose of meeting an immediate business need. In fact, it would appear to be to Golconda's advantage to have these liquid funds remain invested rather than sitting idle in a corporate bank account. Therefore, to attempt to estimate the cost of disposing of Golconda's investment securities in a block transaction would be not only highly speculative, but also would be in direct conflict with the method of disposal that would in all likelihood be employed. Since Golconda has actively traded its Hecla stock during the period in issue without adversely affecting the market price of such stock, it is impossible for us to conclude that another method of disposal would or should be employed in raising cash by partial liquidation of its investment assets. Petitioner's citation of authority to show instances where courts have reduced quoted market values for various securities are inapposite since those cases involved "Investment letter stock" which could not be traded on the open market. No such restrictions exist with respect to Golconda's holdings of Hecla stock, nor would one be created on the disposition of this stock in the manner above outlined.

For these reasons we conclude that it would be entirely speculative to say that the disposition of Golconda's investment securities would be by block sale, involving registration, secondary offerings, and private placements. It is also impossible to estimate the capital gains tax that would be incurred by Golconda in the sale of its investment securities. Finally, it should be borne in mind that petitioner received substantial dividend income which provided a source of cash for its current business needs and petitioner actually made a practice of borrowing funds, especially to finance its securities trading.

Respondent asks us to reconsider the effect to be assigned to the 230,000 shares of Hecla stock received by petitioner in exchange for its Lucky Friday interest. As respondent points out, such an asset cannot always be considered a liquid asset related to the operation of petitioner's business. In this case we have simply concluded that during the period in issue this stock did not constitute an unrelated investment asset. The stock had been received by Golconda in 1964 and was held in part to assist it in negotiating a joint exploration program with Hecla. Through the end of 1966, we conclude, not entirely without reservations, that the character of this holding had not changed.

Accordingly, petitioner's motion for reconsideration will be denied.

*An appropriate order will be entered.*