**IVAN ALLEN COMPANY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 73-2866.**

United States Court of Appeals, Fifth Circuit.

May 3, 1974.

John W. Stokes, Jr., U. S. Atty., William Mallard, Julian M. Longley, Jr., Asst. U. S. Attys., Atlanta, Ga., Scott P. Crampton, Asst. Atty. Gen., John F. Murray, Benton Burroughs, Jr., Meyer Rothwacks, Elmer J. Kelsey, William S. Estabrook, III, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Kirk M. McAlpin, Herschel M. Bloom, Michael C. Russ, Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, SIMPSON and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

The issue on this appeal concerns the standard for measuring the amount of a corporation's liquid assets in determining the applicability of the tax imposed upon a corporation for not distributing to its shareholders the earnings and profits that exceed its reasonable business needs.[1] More specifically, we must

---

1. Section 531 of the Internal Revenue Code imposes the accumulated earnings tax on any corporation that, according to § 532, is "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders . . . by permitting earnings and profits to accumulate instead of being divided or distributed." 26 U.S.C. §§ 531, 532.

decide whether securities, which have appreciated substantially in value, should be measured by their original cost to the corporate taxpayer, or at the fair market value less the expense of conversion into cash. The district court held for taxpayer Ivan Allen Company, concluding that liquid assets would be measured at their original cost. Ivan Allen Co. v. United States, 349 F.Supp. 1075 (N.D.Ga., 1972). We do not agree with the district court's disposition of this case and therefore reverse.

The stipulated facts demonstrate that since 1902 Ivan Allen Company, a Georgia corporation, has sold office machinery and supplies in and around Atlanta, Georgia. In the late 1950's or early 1960's the corporate management recognized the great potential in Xerox Corp. securities and invested about $218,180 in them. Ivan Allen obviously made a wise investment because, since the purchase of the securities, their value has increased about ten times the original cost. It is the substantial appreciation of this stock that gives rise to the present controversy.

The district court, recognizing the varying standards adopted by the courts for measuring the amount of a corporation's liquid assets,[2] concluded that the proper standard was the original cost to the corporation rather than the fair market value. The parties' stipulations, in view of the court's determination, dictated the conclusion that Ivan Allen Co.,

had not unreasonably accumulated earnings or profits.

The Supreme Court in Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346 (1938), stated that, when determining whether a corporation has withheld earnings in excess of reasonable business needs, "[d]epreciation in any of the assets is evidence to be considered . . . ." Id. at 291. Implicit in the National Grocery decision is the Court's concern with the actual financial status of the corporation and its ability to meet business needs from available resources. Liquidation of depreciated assets may not produce adequate funds to meet needs arising in the course of business.

Unlike National Grocery, the liquid assets in the case at hand have appreciated in value rather than depreciated, but the underlying principle is still applicable. Because the liquid assets can be easily converted into cash, the appreciated value of the securities is readily available to meet the business needs of the corporation as they arise. To accurately determine Ivan Allen's ability to meet business needs from its available resources, the appreciated value of the securities must be taken into account. As unrealized depreciation of liquid assets is considered in determining whether a corporation has unreasonably accumulated profits, unrealized appreciation likewise must be considered.

2. Based on facts similar to those in the case at hand, the Tax Court in Golconda Mining Corp. v. Comm'r, 58 T.C. 139 (1972), supp. opin. 58 T.C. 736 (1972), reached a result contrary to that of the district court. Our decision today brings this court in line with the Golconda decision. Golconda is currently on appeal to the Ninth Circuit. Also consistent with Golconda is the case of Henry Van Hummell, Inc. v. Comm'r, P–8 Memo T.C. ¶ 64,290 (1964), aff'd. 364 F.2d 746 (10th Cir., 1966), cert. den. 386 U.S. 956, 87 S.Ct. 1019, 18 L.Ed.2d 102 (1967).

There are two decisions that offer support for the district court's conclusion. American Trading & Prod. Corp. v. United States, 362 F.Supp. 801 (D.Md., 1972), aff'd. 474 F.2d 1341 (4th Cir., 1973) ; Harry A. Koch Co. v. Vinal, 228 F.Supp. 782 (D.Neb., 1964). Arguably, the American Trading decision, on which the district court heavily relied, is not

inconsistent with our conclusion in the instant case. In American Trading the corporation, like in the case at hand, had purchased securities that had appreciated substantially in value. The court held that, despite the substantial appreciation in liquid assets, this appreciation was not earnings or profits within the meaning of § 531 because it was derived from the corporation's original capital. Also, because of additional circumstances such as insider trading limitations, the securities were not as liquid as they might be under ordinary circumstances, and therefore were not readily available to meet the corporation's business needs. See Comment, Accumulated Earnings Tax: Should Marketable Securities be Valued at Cost or at Fair Market Value in Determining the Reasonableness of Further Accumulations of Income? 40 Brooklyn L.Rev. 192 (1973).

We are supported in this conclusion by our decision in Battelstein Investment Co. v. United States, 442 F.2d 87 (5th Cir., 1971). The taxpayer in *Battelstein* had sold real estate and received in return a partial initial cash payment and a long term note for the unpaid balance. Holding that the discounted value of the note, although yet unrealized gain, should be considered in determining whether the corporation had unreasonably accumulated profits, Chief Judge Brown stated:

> "Looking ahead—as the concept of reasonable accumulating contemplates —Taxpayer, as it surveyed the future at FY 1963's end, could not ignore this rich resource. This bluechip note effectually secured by gilt-edged Houston land was then worth not less than the discounted value. Granted that for income tax purposes the deferred payments did not constitute 'income' or 'earnings' for FY 1963 the discounted value of this highly liquid asset had to be reckoned with in weighing foreseeable, planned (i) needs against (ii) available resources at the time of need."

*Id.* at 89. Like the note in *Battelstein,* the securities involved in the case at bar are of such a highly liquid character as to be readily available for business needs that might arise. Thus the appreciated value of these securities should be taken into account when determining whether the corporation has accumulated profits in excess of reasonable business needs.

We are not persuaded by taxpayer's argument that our conclusion to take into account the appreciation of the securities is inconsistent with sound business practices. Because of the day to day fluctuation of the stock market, taxpayer argues, the appreciation of the securities is not truly an available resource for meeting business needs. But while it is true that the stock market is highly unpredictable, we still believe that the fair market value is a closer approximation of available resources than simply the historical cost.

Nor do we think that our decision imposes undue limitations on the exercise of the corporation's sound business judgment in the conduct of its financial affairs. In no way do we attempt to dictate any point in time when appreciated assets are to be sold, exchanged or distributed to the shareholders. This decision does not force the corporation to liquidate these securities at any time when a sale would be financially unwise, but only compels the corporation to comply with the proscriptions of the Code and refrain from accumulating excessive earnings and profits. That taxpayer, as a consequence of its own sound judgment in making profitable investments, must sell, exchange or distribute to the shareholders assets in order to avoid an excessive accumulation of earnings and thus comply with the Code's requirements is no justification for precluding its application.

Having concluded that the proper standard for determining the amount of taxpayer's liquid assets is the fair market value less the expense of converting them into cash, we reverse and remand for the additional factual determination of whether one purpose for the accumulation was to avoid income tax on behalf of the shareholders.[3]

---

3. Section 533(a) of the Code provides in part that "the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by a preponderance of the evidence shall prove to the contrary." 26 U.S.C. § 533(a). It has been stipulated that, if the measure for determining the amount of liquid assets is the original cost to the corporation, then the corporation has not unreasonably accumulated earnings. If, however, the measure is determined to be the fair market value less the cost of conversion, then the corporation has accumulated excessive earnings. Because we conclude that the proper measure is the fair market value of the securities, we must remand for additional evidence to see if the taxpayer can prove that the accumulation was not for the purpose of avoiding income tax.