The **FACTORIES INVESTMENT COR-
PORATION**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE**, Respondent.

No. 128, Docket 28369.

United States Court of Appeals
Second Circuit.

Argued Jan. 15, 1964.

Decided March 10, 1964.

Benjamin Nadel, New York City (Norman Nadel, New York City, on the brief), for petitioner.

David I. Granger, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, on the brief), for respondent.

Before LUMBARD, Chief Judge, and SWAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The Commissioner determined deficiencies in petitioner Factories Investment Corporation's income tax returns for the fiscal years ending June 30, 1958 and 1959 in the respective amounts of $6,432.05 and $6,474.52, on accumulated earnings of a corporation availed of for the purpose of avoiding tax in respect of its shareholders. The Tax Court sustained the Commissioner, and the taxpayer corporation has appealed. We find no error and affirm the judgment.

There is no real dispute as to the underlying facts, which are set out in considerable detail in the opinion of the Tax Court, 39 T.C. No. 95 (1963). In 1936 Princeton Knitting Mills (Princeton), a Connecticut corporation engaged in the manufacture of knitted fabrics, and recently also simulated fur, was faced with the unappealing prospect of having a mortgagee foreclose on its plant. Princeton's principal stockholders, Max Doft and Harry Fleisher and their wives, organized the petitioner to buy the mortgage.

Since its inception in 1936, petitioner's chief business activity has been leasing property and lending money to Princeton. In 1944 petitioner bought a piece of industrial property in Waterbury, Connecticut for some $60,000. It was immediately rented for $35,000 a year to Princeton, who renovated the building extensively. From time to time the petitioner purchased machinery for the Waterbury building, and in 1954 upped the rental to $40,000 a year.

Though substantial sums have come into petitioner's coffers over the years, little has come out. Factories Investment Corp. has never paid a dividend to its stockholders or salaries to its officers. From 1955 to 1959 its earned surplus increased from $244,016.87 to $335,987.12. During that period, it paid out about $14,000 annually, primarily for income taxes. Its net profit after taxes in each of the years from 1955 to 1959 ran about $23,000. Since the bleak years of the depression, Princeton has prospered, paying considerable amounts in dividends and increasing its net worth to nearly $5,000,000.

■■ Sections 531 and 532 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 531 and 532 (1958), impose an accumulated earnings tax on corporations "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed." Section 533 provides that accumulation of earnings and profits "beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary."

However, if in a proceeding before the Tax Court, the taxpayer submits to the Internal Revenue Service a statement of the grounds and facts on which he relies to establish that there has been no unreasonable accumulation, § 534 shifts the burden of proof to the Commissioner with respect to the grounds set out in the taxpayer's statement. See Raymond I. Smith, Inc. v. C. I. R., 292 F.2d 470, 474 (9 Cir. 1961). If the Tax Court decides that profits and earnings have been accumulated beyond the reasonable needs of the business, the taxpayer is not foreclosed from contesting the ultimate issue—whether the corporation has been formed or availed of to avoid income tax on its shareholders. But on the ultimate issue, the taxpayer needs a preponderance of the evidence to prevail. Oyster Shell Products Corp. v. C. I. R., 313 F.2d 449, 453 (2 Cir. 1963).

Here the petitioner filed a § 534 statement setting out two grounds, summarized by the Tax Court as:

(1) Petitioner and Princeton were units in a single business enterprise, with petitioner furnishing space for carrying on manufacturing, and with Princeton actually carrying on manufacturing activities. By reason of Princeton's addition of the new line of products (simulated fur), that corporation's working capital was depleted by its outlays for new equipment; and it was necessary for petitioner to use its earnings and profits, by way of loans to Princeton, to supply Princeton's needs for working capital.

(2) Petitioner was compelled to make loans to Princeton, its only tenant and its only source of income, in order to enable that corporation to modernize its equipment, so that Princeton could remain in the Waterbury area and remain a tenant of petitioner. Stated another way, loans by petitioner to Princeton were necessary, as a device to retain for petitioner its only customer and sole source of revenue.

The Tax Court deemed this statement sufficient to shift the burden of proof to the Commissioner under § 534. However, it found that the Commissioner had successfully borne his burden of showing that earnings had been accumulated beyond the reasonable needs of the petitioner's business. It further found that the taxpayer had failed to prove that it had not been availed of to avoid income taxes on its shareholders.

■■ On this appeal the petitioner first attacks the Tax Court's finding that earnings were accumulated beyond the reasonable needs of its business. The petitioner contends that the Tax Court went awry by refusing to regard Factories Investment Corp. and Princeton as a single business enterprise. We are urged to set aside the Tax Court's finding of fact as clearly erroneous and make a finding based on similar stock ownership and functional inter-relationship between the two corporations, that Princeton and petitioner actually comprised a single business enterprise for the purposes of § 531. We decline to do so and think the Tax Court's refusal to part the corporate veils quite proper. Separate books were kept, and funds were not commingled. Princeton's business was the manufacture of knitted fabrics and simulated fur; petitioner's business was the leasing of realty. Section 1.537–3 (b) of the Treasury Regulations under the 1954 Code suggests that one corporation must be a mere instrumentality of the other to be considered as a single business enterprise.

If one corporation owns the stock of another corporation and, in effect, operates the other corporation, the business of the latter corporation may be considered in substance, although not in legal form, the business of the first corporation. * * Thus, the business of one corporation may be regarded as including the business of another corporation if such other corporation is a mere instrumentality of the other corporation; that may be established by showing that the first corporation

owns at least 80 percent of the voting stock of the other corporation. If the taxpayer's ownership of stock is less than 80 percent in the other corporation, the determination of whether the funds are employed in a business operated by the taxpayer will depend upon the particular circumstances of the case.

None of Princeton's stock is owned by the petitioner. The stock ownership of the two corporations was not even identical; approximately 5% of Princeton's stock was owned by key employees, while all petitioner's stock was owned by the Dofts and Fleishers. The leasing of property and lending money to another corporation is hardly sufficient to justify treating separate corporate entities as a single unit for tax purposes. The case against the petitioner is even stronger than in Latchis Theatres of Keene v. C. I. R., 214 F.2d 834 (1 Cir. 1954), where the funds of various family corporations were shuffled from corporation to corporation. In holding that for the purposes of the accumulated earnings tax, the accumulated earnings of each of the corporations involved must be reasonably needed in each of their respective businesses, the court stated:

"The Latchis family could have put all of their properties in one corporation and operated all of their businesses through that corporation. Then the arguments they make here that the earnings of one activity can be retained to aid or develop another phase of the business would have more force. But they chose, instead, to divide their holdings and business activities among a number of separate corporations in order to limit liabilities and perhaps to obtain other benefits. They must be judged by what they did in this respect rather than by what they might have done." 214 F.2d at 837.

■■ Looking at the petitioner as a separate business, the Tax Court's determination that earnings had been accumulated beyond the needs of its business must be sustained. There are no special circumstances here as there were in R. Gsell & Co. v. C. I. R., 294 F.2d 321 (2 Cir. 1961), where the constant threat of having to pay large sums within eight days of irregular shipments of Swiss watches made the accumulation of substantial sums a reasonable business requirement. While the accumulation of funds by a landlord corporation to loan a tenant enough to survive an approaching financial crisis might be a legitimate business need, the record amply supports the Tax Court's conclusion that Princeton did not require loans from the petitioner in order to survive. Princeton was a successful company with an established line of commercial credit. Earnings for the fiscal years in question, 1958 and 1959, totaled $570,723.02, and there was no convincing showing that lines of credit normally employed by Princeton would be unavailable.

■■ Finally, the petitioner contests the Tax Court's determination of the ultimate issue, where the petitioner had the burden of proving that the accumulation was not for the inhibited purpose. Though one of the owners and directors of the petitioner, Max Doft, testified that earnings were accumulated in the petitioner to protect the business from the spectre of the depression days, the Tax Court's inference that the petitioner was utilized to avoid income taxes on its shareholders is plainly permissible. Neither dividends nor salaries were paid from the time the petitioner was organized in 1936 until its liquidation in 1960. Had the unreasonably accumulated earnings been distributed, the income tax liability of the shareholders would have been substantially increased. Under these circumstances the Tax Court is not required to credit the denial of an intent to avoid income taxes by a director or officer of the taxpayer. See Trico Products Corp. v. McGowan, 169 F.2d 343 (2 Cir. 1948), cert. denied 335 U.S. 899, 69 S.Ct. 300, 93 L.Ed. 435 (1948).

The judgment of the Tax Court is affirmed.