**Gabriel ARBER et al., Plaintiffs, Appellants,**

v.

**AMERICAN AIRLINES, INC., Defendant, Appellee.**

**No. 6381.**

United States Court of Appeals
First Circuit.

May 19, 1965.

David B. Kaplan, Boston, Mass., for appellants.

Robert Fulton, Boston Mass., with whom David H. Fulton, Boston, Mass., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Senior Circuit Judge (by designation).

These appeals from four judgments entered in consolidated cases on jury verdicts for the defendant present only the question of the propriety of the exclusion of documentary evidence.

The plaintiffs were paying passengers on an American Airlines Electra flight which left Boston at 8:00 A.M. on September 14, 1960, for La Guardia airport, New York, and points beyond. On coming into land on the assigned runway at La Guardia the landing gear of the plane struck the top of a dike at the end of the runway, and the plane crashed. The appellants claimed personal injuries and brought actions against American Airlines alleging careless and negligent operation of the airplane. The defense was that as the plane made a normal, safe approach to the runway it unexpectedly and without warning encountered a "thermal sink" or "down draft" which caused it suddenly to lose altitude and hit the dike.

To counter this defense, which so far as the record shows rested entirely on the testimony of the captain flying the plane, the plaintiffs without objection were allowed to introduce an accident report emanating from the defendant airline which contained the statement that "weather was not considered a factor in this accident." Later for the same purpose the plaintiffs offered a mimeographed document in the form of a letter received by the plaintiff Arber on the letterhead of American Airlines. This letter is addressed only "Dear Sir," is dated October 17, 1960, and is signed, apparently with a rubber stamp, by one "Thornton Wagner, Captain," who identified himself in the body of the letter as "Engineering Test Pilot" for American Airlines. Its purport is to restore public confidence in the Electra airplane two of which had previously been involved in accidents attributed to structural failure. The letter stresses the safety of the plane flown at reduced speed and the fact that American Airlines flies it only at reduced speed and attributes this accident and one in which a similar plane crashed after flying into a flock of sea gulls as not having been caused by any structural defect in the plane. With respect to this particular accident the letter states: "The consensus is that this was an unfortunate accident, just too short and low a landing."

The court allowed the letter to be marked for identification but on the defendant's objection refused to admit it in evidence as an exhibit on two grounds: lack of any showing that Captain Wagner had any authority to make admissions binding on the airline and failure of the letter to say "whose consensus it is." We think this ruling correct on the first ground and so do not need to consider the second.

Assuming for the moment that the letter constituted an admission against the defendant's interest, which is the purpose for which it was offered, its admissibility depends upon whether Captain Wagner had authority under the principles of the law of agency to make the admission on behalf of his corporate employer. See United States v. United Shoe Machinery Corp., 89 F.Supp. 349, 353 (D.C.Mass.1950). There is no direct evidence or offer of evidence that Captain Wagner was clothed with specific authority in this respect. However, it might be inferred from Captain Wagner's position as the defendant's engineering test pilot that he had apparent authority to speak for the airline with respect to the safety of the planes it flew. But the inference is not nearly so clear that he also had apparent authority to speak for the airline with respect to the manner in which one of its planes was flown on a specific occasion. We think it well within the discretionary power of the court below to require the plaintiffs to come forward with more specific evidence of Captain Wagner's authority to speak for the defendant on this subject before admitting the letter in evidence. See Restatement (Second) Agency § 286 (1957).

Subsequently, apparently in an effort to make the Wagner letter binding on the defendant by showing its endorsement by higher corporate authority, the plaintiffs, again through the plaintiff Arber, undertook to introduce another mimeographed document in the form of a letter of the same date. This letter is on the letterhead of C. R. Smith, 100 Park Avenue, New York, 17 New York, is simi-

larly addressed only "Dear Sir:" and is similarly signed apparently with a rubber stamp. It gives no indication of C. R. Smith's connection with American Airlines. The letter refers to previous publicity about the Electra airplane, some "excellent" and some "unfavorable", and continues: "You will be asked questions about the Electra; we want you to be informed about it." The letter then goes on: "No one knows more about the capability of the Electra than the parties who fly it. Accordingly, I have asked Captain Thornton Wagner, Test Pilot for American, to write you a note about the Electra, and that note is attached." The letter concludes with a statement "about American's operating philosophy" with respect to the safety of the planes it operates.

The court below allowed this letter to be marked for identification but after conference at the bench at which counsel for one of the plaintiffs said: "Smith is president of the company" refused to admit it in evidence as an exhibit on the same grounds assigned for refusing to admit the letter from Captain Wagner. The court announced: "The burden is on the plaintiff to show evidence is admissible, if it is offered by way of admission."

The C. R. Smith letter is not an intracompany accident report such as the one introduced by the plaintiffs in this case without objection. Nor is it a letter written by an airline captain to his superior by way of a report of an accident such as Captain Sigman's letter ruled admissible in Pekelis v. Transcontinental & Western Air, Inc., 187 F.2d 122, 125, 23 A.L.R.2d 1349 (C.A. 2, 1951), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951). There is nothing to show that it was a record made in the regular course of business and thus admissible under Title 28 U.S.C. § 1732(a). Nor is it a press release to the public generally for promotional purposes. On the other hand, neither is it a personally signed letter addressed to a specific recipient.

We think the court below did not err in its ruling excluding the Smith letter from evidence.

There is no extrinsic evidence to indicate the source of the letter as a higher corporate official who might be assumed to have apparent authority to speak for his corporation. There is not even intrinsic evidence in the letter itself to indicate that the purported writer was president of the defendant airline. It is not written on airline stationery, like Captain Wagner's letter, but so far as appears on a personal letterhead, nor does the writer identify himself in the body of the letter as an airline official in any capacity. It appears to be an inexpensive mimeographed copy of a communication addressed generally to all passengers on the ill-fated flight in order to restore their confidence in the Electra airplane. In view of the content and form of the letter and the lack of evidence identifying C. R. Smith with American Airlines or any showing that the letter actually came from him, we think the court below did not abuse its discretion in refusing to admit the letter in evidence on nothing but counsel's statement that "Smith is president of the company."

■ Moreover, the letter does not authorize Captain Wagner to commit the airline as to the manner in which its airplanes are flown on specific occasions. It only authorized Captain Wagner "to write you a note about the Electra" because "we want you to be informed about it." Thus, even if the C. R. Smith letter actually emanated from the president of the defendant airline, it would add nothing to the authority of Captain Wagner to admit the airline's liability for this particular accident.

On the facts of this case we conclude that the court below did not abuse its discretion in refusing to allow the jury to consider Captain Wagner's letter without more showing of his authority.

Judgment will be entered affirming the judgments of the District Court.