ATLANTIC PROPERTIES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1041–71.    Filed August 19, 1974.

*Sumner Bauman,* for the petitioner.
*Edward DeFranceschi,* for the respondent.

GOFFE, *Judge:* The Commissioner determined deficiencies in Federal income tax of petitioner as follows:

| TYE Nov. 30— | Deficiency | TYE Nov. 30— | Deficiency |
|---|---|---|---|
| 1965 | $3, 318. 89 | 1967 | $8, 525. 26 |
| 1966 | 8, 233. 46 | 1968 | 7, 740. 40 |

The sole issue is whether petitioner, during the taxable years in question, was formed or availed of for the purpose of avoiding the income tax with respect to its shareholders by permitting earnings and profits to accumulate instead of being divided and distributed and is, therefore, subject to the accumulated earnings tax imposed under section 531 of the Internal Revenue Code of 1954.[1]

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference.

Atlantic Properties, Inc., the petitioner herein, is a corporation organized under the laws of the Commonwealth of Massachusetts in 1951. At the time the petition was filed, its principal place of business was at Norwood, Mass. Since its inception, the petitioner's principal business has been the management and rental of industrial property located in Norwood, Mass.

The petitioner uses the accrual method of accounting and its taxable year ends November 30. Petitioner filed its Federal income tax returns for the taxable years ended November 30, 1965, through November 30, 1968, with the district director of internal revenue, Boston, Mass.

During the taxable years at issue, the petitioner had 100 shares of no-par capital stock issued, outstanding and held by the following persons in the following amounts:

| Name | Number of shares | Percent of total shares |
| --- | --- | --- |
| William H. Burke, Jr | 25 | 25 |
| Paul T. Smith | 25 | 25 |
| Louis E. Wolfson | 25 | 25 |
| Abraham Zimble | 13 | 13 |
| Louis Zimble | 12 | 12 |

During the taxable years in controversy, the following persons served as officers and directors of the petitioner:

| Name | Office | |
| --- | --- | --- |
| William H. Burke, Jr | | Director |
| Paul T. Smith | Clerk | Director |
| Louis E. Wolfson | President | Director |
| Abraham Zimble | Treasurer | Director |

Section 8 of article III of the petitioner's bylaws provides as follows:

Stockholders entitled to vote shall have one vote for each share of stock owned by them. No election, appointment or resolution by the Stockholders and no

---

[1] All Code section references are to the Internal Revenue Code of 1954 in effect during the taxable years in issue, unless otherwise noted.

election, appointment, resolution, purchase, sale, lease, contract, contribution, compensation, proceeding or act by the Board of Directors or by any officer or officers shall be valid or binding upon the corporation until effected, passed, approved or ratified by an affirmative vote of eighty (80%) per cent of the capital stock issued outstanding and entitled to vote.

The articles of organization contain similar restrictions with respect to an 80-percent vote by the shareholders.

Petitioner purchased 72 acres of land with buildings thereon in 1951 at a total cost of $350,000. The purchase of the tract was financed by a mortgage of $300,000 and a downpayment of $50,000. In 1952, petitioner sold three portions of the tract for a total price of $160,500.

During the taxable years in issue, petitioner held 20 acres of the original tract with 20 predominantly mill-type, wooden buildings thereon. Petitioner had offered this property for sale at a price of $600,000 during the years in question.

On its income tax returns, petitioner reported gross income from the following sources:

| TYE Nov. 30— | Rents | Interest | Other |
|---|---|---|---|
| 1965 | $143,996.33 | $3,292.05 | $67.64 |
| 1966 | 151,950.73 | 1,263.10 | 111.74 |
| 1967 | 148,106.27 | 9,240.93 | 216.31 |
| 1968 | 144,197.62 | 11,431.39 | 490.72 |

For the taxable years ended November 30, 1965, through November 30, 1968, petitioner's balance sheets reflected the following current assets and liabilities:

| | Nov. 30, 1965 | Nov. 30, 1966 | Nov. 30, 1967 | Nov. 30, 1968 |
|---|---|---|---|---|
| Current assets: | | | | |
| Cash | $63,024.95 | $213,821.15 | $221,725.74 | $226,766.70 |
| Notes and accounts receivable | 11,047.83 | 10,470.45 | 5,478.58 | 11,179.34 |
| Investments | 98,976.19 | 0 | 0 | 0 |
| Other current assets | 7,097.27 | 6,933.31 | 7,858.95 | 9,145.58 |
| Total | 180,146.24 | 231,224.91 | 235,063.27 | 247,091.62 |
| Current liabilities: | | | | |
| Accounts payable | 5,119.33 | 5,298.69 | 13,808.51 | 4,468.06 |
| Deposits and withdrawals | 0 | 1,133.75 | 1,658.75 | 601.60 |
| Accrued liabilities | 4,218.20 | 17,854.84 | 17,037.37 | 13,959.34 |
| Total | 9,337.53 | 24,287.28 | 32,504.63 | 19,029.00 |
| Net current assets | 170,808.71 | 206,937.63 | 202,558.64 | 228,062.62 |

For the taxable years ended November 30, 1965, through November 30, 1968, the ratios of petitioner's current assets and current liabilities were as follows:

| Year | Current assets | Current liabilities | Ratio |
|---|---|---|---|
| Nov. 30, 1965 | $180,146.24 | $9,337.53 | 19.3 to 1 |
| Nov. 30, 1966 | 231,224.91 | 24,287.28 | 9.5 to 1 |
| Nov. 30, 1967 | 235,063.27 | 32,504.63 | 7.2 to 1 |
| Nov. 30, 1968 | 247,091.62 | 19,029.00 | 13.0 to 1 |

For the taxable years ended November 30, 1965, through November 30, 1968, petitioner's earned surplus was as follows:

| Year | Earned surplus at beginning of year | Earned surplus at end of year | Increases in surplus |
|---|---|---|---|
| Nov. 30, 1965 | $256,626.86 | $268,695.76 | $12,068.90 |
| Nov. 30, 1966 | 268,695.76 | 297,419.15 | 28,723.39 |
| Nov. 30, 1967 | 297,419.15 | 328,045.08 | 30,625.93 |
| Nov. 30, 1968 | 328,045.08 | 352,354.28 | 24,309.20 |

Petitioner did not distribute any dividends during the taxable years involved and during its entire history it has paid only $20,000 in dividends, $10,000 being paid in each of the taxable years ended November 30, 1964 and 1970. Nor did petitioner pay salaries to its officers during the years in issue. Salaries were paid to petitioner's officers in taxable years ended November 30, 1959 and 1960, as follows:

| | 1959 | 1960 |
|---|---|---|
| William H. Burke, Jr | $4,500 | $5,000 |
| Paul T. Smith | 4,500 | 5,000 |
| Louis E. Wolfson | 9,000 | 7,000 |
| Abraham Zimble | 7,500 | 7,000 |
| Total | 25,500 | 24,000 |

Petitioner had no specific, definite plans to make extensive repairs or improvements to its real estate in Norwood, Mass. In the view of Paul T. Smith, officer, director, and shareholder of the petitioner, the reasonable business needs of the petitioner did not require the accumulations of income made by the petitioner. All of petitioner's officers, directors, and shareholders, with the exception of Louis E. Wolfson, viewed the accumulation of petitioner's income for the purpose of extensive repair of its real estate as both unnecessary and unrealistic.

Throughout the years in issue, Dr. Louis E. Wolfson, president, director, and owner of 25 percent of petitioner's outstanding stock, insisted that petitioner's earnings be accumulated and used to make necessary repairs and capital improvements to petitioner's property in order to realize higher earnings and profits and capital appreciation rather than be divided and distributed as salaries or dividends. Many of petitioner's buildings were vacant, not rented or untenable, resulting in petitioner's foregoing income as a result of diminished rents and removal by tenants to other space.

Dr. Wolfson was influenced in his decision to refrain from the payment of dividends in favor of reinvestment of petitioner's earnings and profits in its property by his prior experience in real estate and by the report of an engineering firm (engaged by petitioner) recom-

mending that extensive repairs, replacements, and capital improvements be made to petitioner's property. Dr. Wolfson estimated the cost of the repairs, replacements, and improvements, which he wanted performed with respect to the petitioner's real estate, to be approximately $250,000 as of 1968.

During the taxable years in controversy, Dr. Wolfson suggested to the other directors that he would like to transfer his interest in Atlantic Properties, Inc., to the Louis Wolfson Foundation.

During the years before the Court, petitioner was split into two factions with 75 percent of the shareholders consistently and continually favoring distribution of petitioner's earnings as dividends and 25 percent of the shareholders (i.e., Dr. Wolfson) favoring capitalization of petitioner's earnings. This resulted in ill will between the two factions.

During the years 1965 through 1968, the taxable income of petitioner's stockholders was as follows:

| Stockholder | 1965 | 1966 | 1967 | 1968 |
|---|---|---|---|---|
| Paul T. Smith | $45,111.58 | $65,929.81 | ($36,039.35) | ($14,966.23) |
| William H. Burke, Jr | 11,904.39 | 10,601.76 | 10,665.50 | 8,518.54 |
| Abraham Zimble | 20,659.00 | 59,406.00 | 60,755.00 | 42,123.00 |
| Louis Zimble | 87,319.00 | 159,607.00 | 104,215.00 | 139,283.00 |
| Louis E. Wolfson | 152,586.58 | 133,656.59 | 263,375.00 | 65,649.00 |

If petitioner had distributed its current earnings as of November 30, 1965, November 30, 1966, November 30, 1967, and November 30, 1968, the total income tax liabilities of petitioner's shareholders would have been increased as follows:

| Taxable year | Increase | Taxable year | Increase |
|---|---|---|---|
| 1965 | $3,238.75 | 1967 | $10,038.31 |
| 1966 | 11,260.63 | 1968 | 8,860.64 |

On September 17, 1970, in accordance with the provisions of section 534 of the Internal Revenue Code of 1954, the Commissioner notified petitioner that a statutory notice of deficiency for the taxable years ended November 30, 1965, 1966, 1967, and 1968, was proposed pursuant to section 531 of the Code. On November 4, 1970, Dr. Louis E. Wolfson, president, director, and 25-percent stockholder of petitioner, submitted a statement in the form of a letter (pursuant to section 534 of the Code) to the Commissioner which contained the grounds (and facts on which those grounds are based) upon which Dr. Wolfson relied to

justify the accumulation of petitioner's earnings. The letter reads as follows:

*U.S. Treasury Department*
MR. RANDOLPH W. THROWER, COMMISSIONER
*Internal Revenue Service*
*P.O. Box 9082, J. F. Kennedy Post Office*
*Boston, Mass.   02203*

Re: Atlantic Properties, Inc.,
     Endicott Street
     Norwood, Mass.   02062
     FY 11/30/65—11/30/66
          11/30/67—11/30/68

DEAR SIR:

In order to understand the reasons for the accumulation of funds of Atlantic Properties, Inc., which I believe are not beyond the reasonable needs of business, it is necessary to understand the beginnings of this Company.

In December of 1951, we bought 24 buildings, along with 72 acres of land, for $350,000.00. The buildings, which composed of 650,000 feet of space, were in various degrees of neglect due to the fact that the previous owner had done nothing to keep the buildings in condition, as they had been planning to move for the past several years.

We had two of the buildings demolished within the first few years, but had financial difficulties during this time. In 1957, the IRS threatened [sic] us with a lien on our rents because we had no money to pay taxes. In 1958, the four Directors, each of whom owned 25% of the stock (Mr. A. Zimble and Mr. L. Zimble owned 25% together) received $7,500.00 each, totaling $30,000.00, plus interest for part of a loan made to the Company at its inception.

In 1959, it was voted, and paid to the same group, salaries totaling $25,000.00. In 1960, $24,000.00 was paid in salaries. In 1964, there was a dividend of $10,000.00—$2,500.00 to each individual.

The Bi-Laws of this Company necessitate an 80% vote for any motion to be passed concerning Officers or money to be paid. There were several buildings that were unable to be rehabilitated ever since we bought the plant and which were an unnecessary expense in view of the fact that there was insurance and taxes to be paid for useless property.

I have felt that the money that we had accumulated was necessary for the reasonable needs of the business.

We have now in process, about $100,000.00 worth of work being done and there is still very much more needed in the way of rehabilitation. There is also the need for reserves for—

1) Possible damage done by storms
2) Rents unpaid
3) Possible law suits

Enclosed is a list of work being done and some of the costs, as submitted by Mr. Erikson, Foreman of Atlantic Properties, Inc.

      Very truly yours,

                  (S) Louis E. Wolfson
                  LOUIS E. WOLFSON, M.D.
                           *President*
                    ATLANTIC PROPERTIES, INC.

On November 10, 1970, Dr. Wolfson wrote the Commissioner another letter which reads as follows:

*Internal Revenue Service*
*Office of Regional Commissioner*
*North-Atlantic Region*
*John Fitzgerald Kennedy Federal Building*
*Government Center*
*P.O. Box 9082, J. F. Kennedy Post Office*
*Boston, Mass. 02203*

Attention: Asst. Chief, Appellate Branch Office
Re: Atlantic Properties, Inc.,
    Endicott Street
    Norwood, Mass. 02062
    11/30/65–11/30/66
    11/30/66–11/30/67
    11/30/67–11/30/68

DEAR SIR:

As indicated by your letter of September 17, 1970, a copy of which is enclosed, the Internal Revenue Service proposes to issue a statutory notice of deficiency for the years indicated above, setting forth an amount with respect to the accumulated earnings tax imposed by Section 531 of the Internal Revenue Code.

On behalf of Atlantic Properties, Inc., I, as President of that corporation, wish to notify you that Paul T. Smith, Esquire, has not been, and will not be, authorized in any way whatsoever, to represent the corporation in this matter.

The Board of Directors of Atlantic Properties, Inc., are presently engaged in the selection of counsel to represent the corporation.

Very truly yours,

(S) Louis E. Wolfson
LOUIS E. WOLFSON, M.D.
*President*
ATLANTIC PROPERTIES, INC.

On November 12, 1970, Paul T. Smith, officer, director, and 25-percent stockholder of petitioner, wrote the following letter to the Commissioner:

RANDOLPH W. THROWER, COMMISSIONER
*Internal Revenue Service*
*U.S. Treasury Department*
*P.O. Box 9082, J.F.K. Building*
*Boston, Massachusetts 02203*

Re: Atlantic Properties, Inc.
    Endicott Street
    Norwood, Mass. 02062
    FY 11/30/65–11/30/66
       11/30/67–11/30/68

DEAR SIR:

I am a 25% stockholder of Atlantic Properties, Inc., and one of four members of the Board of Directors.

I am in receipt of a copy of a letter dated November 4, 1970, addressed to you and signed "Louis E. Wolfson, M.D. President Atlantic Properties, Inc." This

letter purports to explain the position of Atlantic Properties, Inc. with respect to the Section 531 claim now pending against Atlantic Properties, Inc. for the years of 1965, 1966, 1967 and 1968.

Dr. Wolfson's letter to you is not authorized by the Board of Directors nor the stockholders of Atlantic Properties, Inc. The letter represents Dr. Wolfson's personal position and in no way reflects the position of the corporation, inasmuch as 75% of the stockholders and three of the four members of the Board of Directors are in total disagreement with Dr. Wolfson's contentions.

Your department is undoubtedly familiar with a previous action which involved the same issue covering the years of 1962, 1963 and 1964. In that previous case a statement of facts was filed setting forth the respective positions of myself, Abraham Zimble, Louis Zimble, and William H. Burke, Jr., representing 75% of the stockholders and the majority of the Board of Directors on the one hand, and the position of Dr. Louis E. Wolfson, representing 25% of the stock and being a single member of the Board of Directors, albeit, Chairman of the Board, on the other hand.

Mr. Burke, the Messrs. Zimble and I reassert and reaffirm our fundamental position with respect to this proposed notice of deficiency.

By way of resumé, the position of 75% of the stockholders and a majority of the Board of Directors is that dividends should have been declared and that motions for the declaration of dividends were voted for by all but Dr. Wolfson. It is my understanding, on the other hand, that Dr. Wolfson's position is that which he appears to set forth in his letter of November 4, 1970.

We have been in constant dispute about this matter and it is apparently irreconcilable.

At any event, I wish you to understand (and in saying so I speak for 75% of the stockholders and three of the members of the Board of Directors, including myself) that Dr. Wolfson's letter of November 4, 1970, in no way represents the position of the corporation.

Very truly yours,

(S) PAUL T SMITH

Mr. Smith followed up with a letter dated November 14, 1970, which reads as follows:

*Internal Revenue Service*
*Office of Regional Commissioner*
*North-Atlantic Region*
*John Fitzgerald Kennedy Federal Building*
*Government Center*
*P.O. Box 9082, J. F. Kennedy Post Office*
*Boston, Mass. 02203*

Attention: Asst. Chief, Appellate Branch Office
Re:    Atlantic Properties, Inc.
       Endicott Street
       Norwood, Mass. 02062
       11/30/65–11/30/66
       11/30/66–11/30/67
       11/30/67–11/30/68

GENTLEMEN:

As a result of a copy of a letter dated November 10, 1970, mailed to you with the above address and caption, received by me and signed by Louis E. Wolfson,

M.D., I wish to call your attention to the fact that Dr. Wolfson is not acting "on behalf of Atlantic Properties, Inc." in notifying you that I am not authorized "in any way whatsoever" to represent the corporation in this matter.

Three of the four members of the Board of Directors have authorized me to act, 75% of the stockholders have authorized me to act, and when Dr. Wolfson states in the last paragraph of his said letter that "the Board of Directors of Atlantic Properties, Inc. are presently engaged in the selection of counsel to represent the corporation", this is a false statement, inasmuch as I, as a member of the Board of Directors, and Abraham Zimble and William H. Burke, Jr., in their capacities as two other members of the Board of Directors, making a total of three members of the Board of Directors, have adopted the position that Dr. Wolfson has created this tax problem and that, as a consequence, if any lawyer is to be retained, he should be responsible for the payment of fees to that lawyer.

Dr. Wolfson's self-serving statements have been a matter of consistent practice by him and in no way should be regarded as representing the thinking of anyone who is either a member of the Board of Directors or a stockholder, other than Dr. Wolfson.

Very truly yours,

(S) PAUL T SMITH

In a statutory notice of deficiency dated December 8, 1970, the Commissioner determined that in each of the taxable years ended November 30, 1965, 1966, 1967, and 1968, petitioner had permitted its earnings to accumulate beyond the reasonable needs of the business for the purpose of avoiding the income tax with respect to its shareholders, and that petitioner was taxable under section 531 of the Code.

### OPINION

Petitioner's assignments of error not argued on brief are deemed waived. Accordingly, the only substantive issue is whether petitioner, during the taxable years in question, was availed of for the purpose of avoiding income tax with respect to its shareholders by permitting its earnings and profits to accumulate instead of being divided and distributed and is, therefore, subject to the accumulated earnings tax imposed under section 531. Sections of the Code which bear specifically on the issue before us are:

SEC. 531. IMPOSITION OF ACCUMULATED EARNINGS TAX.

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—

(1) 27½ percent of the accumulated taxable income not in excess of $100,000, plus

(2) 38½ percent of the accumulated taxable income in excess of $100,000.

SEC. 532. CORPORATIONS SUBJECT TO ACCUMULATED EARNINGS TAX.

(a) GENERAL RULE.—The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b))

formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.

\*   \*   \*   \*   \*   \*   \*

SEC. 533. EVIDENCE OF PURPOSE TO AVOID INCOME TAX.

(a) UNREASONABLE ACCUMULATION DETERMINATIVE OF PURPOSE.—For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.

\*   \*   \*   \*   \*   \*   \*

SEC. 537. REASONABLE NEEDS OF THE BUSINESS.—For purposes of this part, the term "reasonable needs of the business" includes the reasonably anticipated needs of the business.

Before discussing the substantive issue, we shall first decide whether a certain letter is admissible into evidence as a vicarious admission of petitioner Atlantic Properties, Inc. During the cross-examination of Dr. Wolfson, president of petitioner, respondent offered into evidence a letter dated November 9, 1970, and addressed to Randolph Thrower, Commissioner, Internal Revenue Service, Boston, Mass. This letter was written by Mr. William H. Burke, Jr., in response to a letter he received from the Commissioner. Mr. Burke was a 25-percent stockholder in and a director of petitioner at the time he wrote the letter. Observing that Mr. Burke was not in the courtroom and, therefore, not available for cross-examination, petitioner objected to the letter as hearsay. Respondent argued that the letter was admissible as a vicarious admission of petitioner. Because of the importance of this letter to the instant case, we reserved ruling on admissibility and allowed the parties the opportunity to argue this point on brief.

On brief, respondent relies exclusively on rule 801 (d) (2) (D) of the Rules of Evidence for United States Courts and Magistrates (Federal Rules of Evidence), which provides as follows:

(d) Statements which are not hearsay. A statement is not hearsay if—

\*   \*   \*   \*   \*   \*   \*

(2) *Admission by party-opponent.* The statement is offered against a party and is \* \* \* (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, \* \* \*.

Adoption of the Federal Rules of Evidence is under consideration by Congress. They have no force and effect at the present time. Pub. L. 93–12 (Mar. 30, 1973).

Rule 31 (a), Tax Court Rules of Practice, in effect at the time this case was heard, and Rule 143 (a) of our present Rules of Practice and

Procedure require use of the rules of evidence in trials without a jury in the United States District Court for the District of Columbia. The District of Columbia rules and our present Rule 143(a) incorporate by reference the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 43.

Under the Federal Rules of Civil Procedure, the party relying on the concept of a vicarious admission of a principal by its agent must establish the agency relationship and prove further that the agent was authorized to make the statement, or if not so authorized, that the statement related to matters within the scope of the agency relationship. *Wabisky* v. *D.C. Transit System, Inc.*, 309 F. 2d 317 (C.A.D.C. 1962); *Koninklijke Luchtvaart Maatschappij N.V. KLM* v. *Tuller*, 292 F. 2d 775 (C.A.D.C. 1961), certiorari denied 368 U.S. 921 (1961); *Arber* v. *American Airlines, Inc.*, 345 F. 2d 130 (C.A. 1, 1965), certiorari denied 382 U.S. 907 (1965).

Although respondent established that Mr. Burke was a shareholder and director of petitioner at the time he wrote the letter in question, respondent failed to show that Mr. Burke was an employee or agent of petitioner. Certainly Mr. Burke was not petitioner's agent in his capacity as a stockholder. Nor was he an agent of the petitioner in his capacity as a member of petitioner's board of directors. Restatement 2d, Agency, sec. 14C. Section 8 of article III of petitioner's bylaws specifically provides in part that:

No election, appointment or resolution by the Stockholders and no election, appointment, resolution, purchase, sale, lease, contract, contribution, compensation, proceeding or act by the Board of Directors or by any officer or officers shall be valid or binding upon the corporation until effected, passed, approved or ratified by an affirmative vote of eighty (80%) per cent of the capital stock issued outstanding and entitled to vote.

Petitioner's articles of organization contain similar restrictions with respect to the requirement of an 80-percent vote by the shareholders. Respondent has not shown that Mr. Burke was expressly authorized by an 80-percent vote of the shareholders to speak for or otherwise represent the petitioner in any capacity. Certainly respondent's arguments regarding burden of proof under section 534 preclude any claim of ostensible authority or detrimental reliance. Since respondent failed to prove that Mr. Burke was an agent of the petitioner, Mr. Burke's letter is not admissible as a vicarious admission of petitioner. See 29 Am. Jur. 2d, Evidence, sec. 663; McCormick, Law of Evidence, sec. 244; 4 Wigmore, Evidence, sec. 1078, and authorities cited therein.

At the call of the case for trial, petitioner moved for a ruling that the burden of proof shifted to respondent under the provisions of

section 534 [2] by reason of petitioner's statement filed pursuant to section 534(c). We held that petitioner had the burden of proving that the reasonable needs of the business required the accumulation of earnings and profits during the years in issue. See *Chatham Corp.*, 48 T.C. 145 (1967). Petitioner's charter and bylaws required an affirmative vote of 80 percent of the shareholders to authorize the performance of any act which would bind the corporation. There is no evidence that the petitioner authorized Dr. Wolfson or anyone else to respond to the Commissioner's timely notice sent to petitioner on September 17, 1970, in accordance with section 534(b). Thus, neither Dr. Wolfson's nor Mr. Smith's letters (reproduced in our findings of fact) may be considered to be statements by *the taxpayer* for purposes of section 534(c). Assuming arguendo that such letters were statements by the taxpayer, insufficient facts were presented in support of the grounds set out as justification for the accumulations to shift the burden of proof with respect to such grounds to respondent. *Wellman Operating Corporation*, 33 T.C. 162 (1959); *I. A. Dress Co.*, 32 T.C. 93 (1959), affd. 273 F. 2d 543 (C.A. 2, 1960), certiorari denied 362 U.S. 976 (1960); *Dixie, Inc.*, 31 T.C. 415 (1958), affd. 277 F. 2d 526 (C.A. 2, 1960), certiorari denied 364 U.S. 827 (1960). Furthermore, regardless of whether there was a shifting of a limited burden of proof under section 534, we are satisfied on the evidence before us that the petitioner was availed of for the purpose of avoiding the income tax upon its shareholders by permitting earnings and profits to accumulate instead of being divided or distributed. See *Pelton Steel Casting Co.*, 28 T.C. 153 (1957), affd. 251 F. 2d 278 (C.A. 7, 1958), certiorari denied 356 U.S. 958 (1958).

---

[2] SEC. 534. BURDEN OF PROOF.

(a) GENERAL RULE.—In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall—

(1) if notification has not been sent in accordance with subsection (b), be on the Secretary or his delegate, or

(2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or his delegate with respect to the grounds set forth in such statement in accordance with the provisions of such subsection.

(b) NOTIFICATION BY SECRETARY.—Before mailing the notice of deficiency referred to in subsection (a), the Secretary or his delegate may send by certified mail or registered mail a notification informing the taxpayer that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by section 531. In the case of a notice of deficiency to which subsection (e)(2) applies and which is mailed on or before the 30th day after the date of the enactment of this sentence, the notification referred to in the preceding sentence may be mailed at any time on or before such 30th day.

(c) STATEMENT BY TAXPAYER.—Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary or his delegate may prescribe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business.

Whether a corporation has permitted its earnings and profits to accumulate beyond its reasonable needs and whether it was availed of for the purpose of avoiding the income tax with respect to its shareholders are both questions of fact. *Helvering* v. *Nat. Grocery Co.*, 304 U.S. 282 (1938). Since, in the first instance, it is for the corporate officers and directors to determine the reasonable needs of a particular business, we are reluctant to substitute our business judgment for that of corporate management unless the facts and circumstances, buttressed by the presumptive correctness of respondent's determination, require us to do so. *Faber Cement Block Co.*, 50 T.C. 317 (1968), acq. 1968-2 C.B. 2; *Bremerton Sun Publishing Co.*, 44 T.C. 566 (1965). We have consistently held that in determining whether the earnings and profits of any taxable year have been accumulated beyond the reasonable needs of the business, it is necessary to consider whether accumulated earnings and profits of prior years were sufficient to meet the taxpayer's reasonable business needs (including reasonably anticipated needs) for the current year. Of course, the nature and availability of the prior year's accumulated surplus must be considered. To the extent accumulated surplus has been translated into plant expansion or inventories or other business-related assets, it is not available for meeting current or anticipated business needs. Conversely, when accumulated surplus is retained in the form of liquid assets, it is available to meet business needs, and if sufficient to meet the current and reasonably anticipated business needs of the corporation, there is a strong indication that any accumulation of profits of the current year is beyond the reasonable needs of the business. *Novelart Manufacturing Co.*, 52 T.C. 794 (1969), affd. 434 F. 2d 1011 (C.A. 6, 1970), certiorari denied 403 U.S. 918 (1971); *John P. Scripps Newspapers*, 44 T.C. 453 (1965); *Smoot Sand & Gravel Corporation* v. *Commissioner*, 274 F. 2d 495 (C.A. 4, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 362 U.S. 976 (1960); sec. 1.535-3(b) (1) (ii), Income Tax Regs.

At the beginning of the taxable year ended November 30, 1965, petitioner had accumulated $256,626.86 in earnings and profits. Current assets ($177,385.69 of which $164,408.47 was in cash) exceeded current liabilities ($21,268.82) resulting in net current assets of $156,116.87 and an 8.3 to 1 current ratio. Based on the evidence presented and for the reasons discussed further, we conclude that petitioner failed to show a need to accumulate earnings during the years in controversy beyond such amounts accumulated as of the beginning of the taxable year ended November 30, 1965.

Dr. Wolfson, a 25-percent shareholder in and director and officer of petitioner, testified that since the petitioner's shareholders could not agree on what repairs or capital improvements needed to be performed

on petitioner's buildings, petitioner hired an engineering consulting firm in 1962 to make such determination and to estimate the costs thereof. The firm prepared a report dated June 5, 1962, which estimated the cost of recommended repairs and capital improvements to be $296,040. The first page of this report reads in part as follows:

A report covering a general survey of the buildings at the Atlantic Properties Incorporated, Endicott Street, Norwood, Massachusetts has been made by this office. These buildings are shown on a general plan in the survey report. The purpose of this survey is to determine whether the existing buildings require capital improvements to put them into rentable condition or whether minor repairs and a general "sprucing-up" will accomplish the same purpose. Also included is a general survey of the water service, plumbing, sprinklers, heating plant, electric service and roads.

In surveying each building we have made a cursory investigation of the conditions of the foundation, exterior walls, windows, doors, roof, including gutters and flashings, floors, elevators, plumbing, heating and sprinklers. We have not listed in the report what was found to be in good condition, only that which was found to require repairs or alteration.

*Estimated costs noted throughout this report should be considered only as a guide to the costs of the various alterations or repairs. Actual costs can only be obtained from detailed examination of the various phases of the work to be done and bid prices based upon carefully drawn-up plans and specifications.* [Emphasis added.]

It is clear from the face of the report that the estimated costs were intended only as a guide. The engineer who performed the survey and prepared the report did not testify and thus we do not know what, if any, were his qualifications as a consulting engineer, nor can we be certain of all the assumptions he used and factors he considered in preparing the report. Under the circumstances, the $296,040 estimate is entitled to little weight, *Dixie, Inc.,* 31 T.C. 415 (1958), and was admitted into evidence for the limited purpose of showing that Dr. Wolfson partially relied on the report in forming his opinion as to the reasonable needs of petitioner's business.

On the basis of the consulting engineer's report and his own knowledge and experience in real estate, Dr. Wolfson testified that prior to and during the years in controversy he was of the opinion that necessary repairs and improvements would cost between $300,000 and $400,000. On close questioning by petitioner's counsel, Dr. Wolfson testified that by 1968 he was of the opinion that necessary repairs and improvements on petitioner's property could be effected for $250,000. Such testimony is inconclusive at best. Dr. Wolfson failed to clearly and convincingly testify as to who would perform what work on which buildings and improvements, when the work would be performed, and how much it would cost. Paul T. Smith, a 25-percent shareholder in and director and officer of petitioner, testified that all shareholders, except Dr. Wolfson, favored payment of dividends during each of the

years in controversy and believed that at least some of the accumulation of earnings in each of the years in issue was beyond the reasonable needs of the petitioner's business. Stipulated transcripts of certain meetings of the petitioner's board of directors corroborate this testimony.

Section 537(a) provides that the reasonable needs of the business includes the reasonably anticipated needs of the business. Section 1.537-1(b)(1), Income Tax Regs., reads as follows:

(b) *Reasonably anticipated needs.* (1) In order for a corporation to justify an accumulation of earnings and profits for reasonably anticipated future needs, there must be an indication that the future needs of the business require such accumulation, and the corporation must have specific, definite, and feasible plans for the use of such accumulation. Such an accumulation need not be used immediately, nor must the plans for its use be consummated within a short period after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of such a plan is postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably anticipated needs of the business.

Were we to stop here, the record reveals that petitioner has failed to establish a reasonable need to accumulate its earnings and profits in each of the years in controversy. However, even if petitioner had shown that present and future needs of the business required the accumulations during the years in issue, the evidence shows that *the petitioner* lacked a specific, definite, and feasible plan during the years in issue which could be expected to be executed within a reasonable time. There is no evidence that petitioner's shareholders or board of directors formally or informally adopted such a plan. See *Dixie, Inc., supra; Bremerton Sun Publishing Co.,* 44 T.C. 566 (1965). In fact, Dr. Wolfson testified in part as follows:

The repairs that we did do were all done under sort of an emergency basis, that we had to do it whether we wanted to or not. We didn't actually go out and do anything that wasn't absolutely essential to exist for the place.

\*         \*         \*         \*         \*         \*         \*

I was against the policy of doing things only when it was absolutely demanding so that we can keep doing business, and I wanted to repair things ahead of time.

Whatever plan may have existed in Dr. Wolfson's mind was clearly not that of the petitioner and insufficient to justify the retention of earnings by petitioner over and above those already accumulated at the beginning of the taxable years in controversy. *Hedberg-Freidheim Cont. Co.* v. *Commissioner,* 251 F. 2d 839 (C.A. 8, 1958), affirming a Memorandum Opinion of this Court; *Nemours Corporation,* 38 T.C. 585 (1962), affd. 325 F. 2d 559 (C.A. 3, 1963).

Having decided that petitioner's accumulations during each of the years in issue were beyond the reasonable needs of the business, we must next decide whether petitioner was availed of for the proscribed purpose. Petitioner has the burden of showing by a preponderance of the evidence that it was not availed of for the purpose of avoiding the income tax with respect to its shareholders. Sec. 533(a), I.R.C. 1954; sec. 1.533–1(b), Income Tax Regs.

In an attempt to rebut the presumption contained in section 533(a), petitioner relies heavily on the conflict in management philosophy that existed between its shareholders and deadlocked its board of directors. Briefly, petitioner's charter and bylaws required an affirmative vote of 80 percent of the shares entitled to vote in order to approve any act which would bind the corporation. Accordingly, such vote was required to approve a resolution by the board of directors to pay dividends or to utilize earnings and profits to effect necessary repairs and capital improvements. Prior to, during, and after the years in controversy, shareholders owning 75 percent of the stock voted in favor of payment of substantial dividends, but Dr. Wolfson who owned a 25-percent voting interest in petitioner consistently vetoed dividends allegedly because he was of the opinion that repairs and capital improvements were needed to ensure petitioner's continued financial success. Petitioner argues that since shareholders representing 75 percent of the voting stock consistently voted in favor of dividends any presumption of the prohibited purpose with respect to these shareholders is negated. On the basis of the record herein, we agree. With respect to Dr. Wolfson, petitioner argues that even assuming that his business judgment was incorrect there is nothing in the record to indicate the prohibited tax avoidance purpose. We disagree.

In addition to cases which are factually distinguishable from the case in issue, petitioner relies on *Casey* v. *Commissioner*, 267 F. 2d 26 (C.A. 2, 1959), reversing a Memorandum Opinion of this Court, which involved a shareholder deadlock precluding distribution of dividends. In that case, the Second Circuit reversed our finding as to one of the years involved and held that the accumulation for that year was for the reasonable needs of the business. The Court of Appeals never determined whether showing a shareholder deadlock precluding distribution of dividends, without more, was sufficient to rebut the section 533(a) presumption of the purpose to avoid income tax with respect to shareholders.

A corporation should not be liable for the accumulated earnings tax if it accumulates for reasons other than the forbidden purpose of section 532(a) even though earnings may have been accumulated out of caprice, spite, miserliness, or stupidity rather than for sound busi-

ness reasons. See *Bremerton Sun Publishing Co., supra;* Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, sec. 8.02 (3d ed. 1971). However, that proposition does not apply to this case because the petitioner has failed to prove by a preponderance of the evidence that during the years in issue the earnings and profits were not accumulated for the prohibited purpose.

The evidence clearly shows that during the years in controversy there was a consistent increase in retained earnings and working capital facilitated by petitioner's failure to pay dividends or salaries to its shareholders, directors, and officers resulting in substantial tax savings to the individual shareholders. See *Factories Investment Corporation*, 39 T.C. 908 (1963), affd. 328 F. 2d 781 (C.A. 2, 1964); *Dixie, Inc.*, 31 T.C. 415 (1958); *Kerr-Cochran, Inc.*, 30 T.C. 69 (1958). Excessive current ratios during the years in controversy constitute another factor damaging to petitioner's position. *I. A. Dress Co.*, 32 T.C. 93 (1959); *Bremerton Sun Publishing Co., supra.*

We conclude that Dr. Wolfson's refusal to permit the payment of dividends by petitioner was for the purpose of avoiding income tax he would be required to pay if petitioner paid dividends or salaries to him. While it is unusual for a minority shareholder to precipitate the unreasonable accumulation for avoidance of income tax on his income, it is also unusual for a corporate charter to require an 80-percent vote for almost all business decisions, including declaration of dividends. Because of his ownership of 25 percent of the voting power, Dr. Wolfson was able to block the payment of dividends and effectively avoid payment of income tax. During each of the years in issue, Dr. Wolfson was in a high tax bracket and indicated a willingness to transfer his stock in petitioner to the Wolfson Foundation. This, plus Dr. Wolfson's lack of a specific, definite, feasible plan for the use of accumulated earnings leads us to conclude that tax avoidance was at least one purpose for Dr. Wolfson's consistent veto of resolutions favoring payment of dividends. See *United States* v. *Donruss Co.*, 393 U.S. 297 (1969). A tax avoidance motive need not be attributed to every shareholder in order to find that tax avoidance was one of the purposes for accumulation. *Golconda Mining Corp.*, 58 T.C. 139 (1972), on appeal (C.A. 9, Nov. 15, 1972).

Considering the entire record, we conclude that during the years in controversy, the petitioner allowed earnings and profits to accumulate beyond the reasonable needs of the business. Petitioner's showing of the shareholder deadlock, without more, is insufficient to rebut the section 533(a) presumption occasioned by this conclusion. Since the petitioner has failed to prove by a preponderance of the

evidence that during the years in issue the earnings and profits were not accumulated for the purpose of avoiding the income tax with respect to its shareholders, we hold that for the taxable years before us petitioner is subject to the accumulated earnings tax imposed by section 531 of the Code, and the respondent's determination is sustained.

*Decision will be entered for the respondent.*